[Civ. No. 13961. Third Dist. Oct. 24, 1974.]

BLACK PANTHER PARTY et al., Plaintiffs and Appellants, v. JOHN KEHOE, as Director, etc., et al., Defendants and Respondents.

648

## COUNSEL

Fred J. Hiestand, JoAnn Chandler and Sidney M. Wolinsky for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and William M. Goode, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**FRIEDMAN, Acting P. J.**—Plaintiffs are the Black Panther Party and the California Legislative Council for Older Americans, both unincorporated associations. Defendants are the Director of the State Department of Consumer Affairs and the Chief of the Bureau of Collection and Investigative Services. Plaintiffs seek judicial enforcement of their demand for inspection of letters of complaint from individuals, charging unethical or abusive practices by licensed collection agencies. The trial court held these complaints exempt from disclosure under the Public Records Act (Gov. Code, § 6250 et seq.) and denied relief. Plaintiffs appeal.

Within the Department of Consumer Affairs are a number of agencies which license and regulate a wide variety of professions and businesses. (See Bus. & Prof. Code, § 101.) One of these agencies is the Bureau of Collection and Investigative Services, which licenses collection agencies. Several statutes deal with citizen complaints which charge licensees with wrongdoing. After receiving a complaint each licensing agency within the department must keep the complainant informed of its action; if appropriate, it may notify the licensee and meet and confer with the licensee and complainant in order to mediate the complaint; the Director of Consumer Affairs is also charged with receiving "complaints from consumers"; upon receipt of a complaint the director may notify the licensee and request relief for the consumer; or he may transmit the complaint to an appropriate enforcement or regulatory agency. (Bus. & Prof. Code, §§ 129, 325, 326; see fn. 10, *infra*.) The director must make an annual report to the Governor and Legislature, showing the number and disposition of consumer complaints. (Bus. & Prof. Code, § 327.) With specific regard to licensed collection agencies, any person aggrieved by a collection agency's action may file a written complaint with the bureau chief, who must refer "all such statements . . . for investigation and report; . . . ." The chief may also initiate investigations of licensees on his own motion. (Bus. & Prof. Code, § 6925.)

Plaintiffs allege that their membership are primarily people of low income who are vulnerable to oppressive activities on the part of some collection agencies;[1] that the Black Panther Party publishes a weekly newspaper to inform the community of matters of common interest. Plaintiffs contend that written complaints against collection agencies in the files of the department or bureau are public records, made available for inspection by the California Public Records Act, which consists of Government Code sections 6250 through 6260.[2]

## I

Pertinent provisions of the California Public Records Act include a statement of statutory policy in Government Code section 6250; the declaration of a general right of public inspection of public records in section 6253, subdivision (a); a list of 14 kinds of disclosure-exempt records, concluding with a provision for permissive disclosure of these, in section 6254; a specific reference in subdivision (f) of that section to "records of com-

---

[1]See *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817]; *Czap* v. *Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1 [86 Cal.Rptr. 417].

[2]Unless otherwise specified, statute section numbers will refer to the Government Code.

plaints" as one of the exempt varieties; a residual category of confidential records described in section 6255.[3] Additionally, sections 6256 and 6257 give "any person" a right to receive a copy of a public record upon payment of a fee. Section 6258 gives "any person" standing to institute judicial proceedings to enforce the right to inspect or receive a copy of a public record.

Plaintiffs' demand is limited to complaints regarding collection agencies, but the disclosure problem raised by the lawsuit extends to consumer complaints in the files of licensing agencies generally. The trial court construed section 6254, subdivision (f) (fn. 3, *supra*), to exempt these complaints from disclosure. The provision is ambiguous and requires interpretation. It contains two separate clauses describing disclosure-exempt papers, but each clause is characterized by variant language:

(a) The first clause exempts "records of complaints to or investigations conducted by, or records of intelligence information or security procedures of" the Attorney General (who is head of the state Department of Justice) or by police agencies.

(b) The second clause exempts "any such investigatory or security files" compiled by other public agencies for correctional, law enforcement or licensing purposes.

The present case pivots on the second of these clauses. Just as the first clause exempts the investigatory files of police agencies, so the second clause exempts investigatory files of licensing agencies. The first clause

---

[3]Government Code section 6250: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."

Government Code section 6253: "(a) Public records are open to inspection at all times during the office hours of the state or local agency and every citizen has a right to inspect any public record, except as hereafter provided. . . ."

Government Code section 6254: ". . . nothing in this chapter shall be construed to require disclosure of records that are: . . . (f) Records of complaints to or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes; . . . Nothing in this section is to be construed as preventing any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law."

Government Code section 6255: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

expressly exempts "records of complaints," but the second clause does not. A letter of complaint may or may not have enough substance to warrant investigation of the licensee. A document does not gain exempt status as part of an investigatory file until there is some concrete prospect of an investigation. (*Uribe* v. *Howie* (1971) 19 Cal.App.3d 194, 212-213 [96 Cal.Rptr. 493].) Thus a written complaint is not *per se* part of an investigatory file. As the California statute is drawn, nondisclosure of a written complaint requires special statutory authority. (Cf. *Evans* v. *Department of Transportation of United States* (5th Cir. 1971) 446 F.2d 821.)

Arguably, this authority comes from the specification in the second clause of "any such" investigatory files. To all appearances, the quoted phrase refers to a described antecedent, its purpose being the avoidance of unnecessary repetition of the preceding description. The words "any such" would be surplusage did they not embrace the same records as the preceding clause. Had the draftsman meant to exclude "records of complaints" from the second clause, he need only have exempted investigatory files without inserting the phrase "any such." A statute should be construed to give force to all its words and to avoid surplusage. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580].) The phrase "any such investigatory or security files" in the second clause of subdivision (f) was apparently designed as a condensed description of all the records described in the first clause, including records of complaints.

## II

Textual analysis is not enough. ■ Statutory ambiguities should be resolved to promote the legislative objective exhibited by the entire enactment. (See *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33]; *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 839 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391].)

Government files hold massive collections which are roughly divisible into public business and private revelations. Statutory and decisional law on public record disclosure reveals two fundamental if somewhat competing societal concerns—prevention of secrecy in government and protection of individual privacy. "The people's right to know" is a rubric which often accompanies disclosure claims. The "right to know" demands public exposure of recorded official action. A narrower but important interest is the privacy of individuals whose personal affairs are recorded in government files. Societal concern for privacy focuses on minimum exposure of personal information collected for governmental purposes. The California courts have equated the right of privacy with the right "to be let alone,"

which must be balanced against public interest in the dissemination of information demanded by democratic processes.[4]

The California Public Records Act was apparently modeled after the 1966 federal statute known as the Freedom of Information Act (5 U.S.C. § 552), although with selected differences. These disclosure statutes form an area of confluence for the conflicting demands of public exposure and personal privacy. Statutory formulae often fail to resolve the conflict. The "right to know" which affects records documenting the activities of public officials applies with less force to reports and returns of personal data supplied by private citizens. The latter too may fall within the spotlight of disclosure needs. Although personal information which private persons supply to government may not itself reveal official action, it may have sharp relevance to inquiries into official conduct.[5]

 In section 6250 (fn. 3, *supra*) the California Public Records Act bespeaks legislative concern for individual privacy as well as disclosure "concerning the conduct of the people's business." The same dual concern appears throughout the act. Subdivision (f) of section 6254 is one of 14 subdivisions of that section, all describing exemptions from the general disclosure requirement. In large part, these exemptions are designed to protect the privacy of persons whose data or documents come into governmental possession. For example, subdivision (c) exempts personnel and medical files "the disclosure of which would constitute an unwarranted invasion of personal privacy." Subdivision (d) protects financial information supplied under legislation regulating financial institutions and securities sales. Subdivision (e) protects such matters as plant production data, market and crop reports "which are obtained in confidence from any person."

---

[4]*Gill* v. *Hearst Publishing Co.* (1953) 40 Cal.2d 224, 228 [253 P.2d 441]; *Carlisle* v. *Fawcett Publications, Inc.* (1962) 201 Cal.App.2d 733, 745 [20 Cal.Rptr. 405]; see generally, Brenton, The Privacy Invaders (1964); Packard, The Naked Society (1964); Westin, Privacy and Freedom (1967); Miller, *Personal Privacy in the Computer Age: The Challenge of a New Technology in an Information-Oriented Society* (1969) 67 Mich.L.Rev. 1089; Karst, *"The Files": Legal Controls Over the Accuracy and Accessibility of Stored Personal Data* (1966) 31 L. & Contemp. Prob. 342; Harrison, The Problem of Privacy in the Computer Age: An Annotated Bibliography (Rand Corp. 1967).

[5]See, e.g., *Samish* v. *Superior Court* (1938) 26 Cal.App.2d 685 [83 P.2d 305]. Two years following the 1968 enactment of the Public Records Act, a California legislative committee observed: ". . . many who have championed the cause of privacy leave unclear the statutory boundary where the personal right of privacy and the public's right to know the workings of its government meet. Those who know the complexity of government records policy and practice will realize that these values do not always remain separate and distinct." (Final Report, Cal. State Assem. Statewide Information Policy Com., p. 21, Assem. J. Appendix (Reg. Sess. 1970).)

The objectives of the Public Records Act thus include preservation of islands of privacy upon the broad seas of enforced disclosure. Recognition of privacy as a distinct statutory goal fully confirms our textual interpretation of section 6254, subdivision (f). Both complaining citizens and the public have an interest in the confidentiality of complaints of wrongdoing prior to the inception of formal enforcement or disciplinary proceedings. Effective enforcement of penal laws depends to no small extent upon the readiness of citizens to complain of alleged crime. Complainants often demand anonymity. The prospect of public exposure discourages complaints and inhibits effective enforcement. Similarly, effective policing of licensed occupations depends heavily on citizens' readiness to complain of wrongdoing by licensees.[6]

In the formulation of a statutory policy governing disclosure of citizen complaints, public concern extends to the alleged wrongdoer as well as the alleged victim. Many a reputation has been lost, many a life damaged, by unfounded accusations of wrongdoing. The public has an ethical interest in protecting private reputations against notoriety emanating from "crank" or malicious accusations.

■ Plaintiffs argue for a broad construction favoring disclosure and a strict construction against confidentiality. Neither the federal nor California act directs broad interpretation of some provisions or narrow interpretation of others.[7] We discern no interpretive mandate in the California law other than unreserved fulfillment of the statutory objectives. The California Public Records Act evidences a legislative policy of disclosure, yet one which is mindful of individual privacy. (§ 6250.)

■ The first clause of subdivision (f) gives concrete recognition to these policy concerns by exempting complaints to police agencies from disclosure. Identical concerns characterize complaints lodged with licensing agencies. Construed in the light of statutory objectives, the second clause of subdivision (f) embraces the same kinds of records in the hands of licensing agencies as does the first clause in relation to police agencies.

---

[6]In *Evans* v. *Department of Transportation of United States, supra,* 446 F.2d at page 824, the court observed that in signing the federal Freedom of Information Act, the President had stated: "A citizen must be able in confidence to complain to his Government and to provide information. * * * I know the sponsors of this bill recognize these important interests and intend to provide for both the need of the public for access to information and the need of Government to protect certain categories of information."

[7]A federal court has held that the congressional plan "creates a liberal disclosure requirement, limited only by specific exemptions which are to be narrowly construed." (*Bristol-Myers Company* v. *F.T.C.* (D.C. 1970) 424 F.2d 935, 938; *Getman* v. *N.L.R.B.* (D.C. 1971) 450 F.2d 670, 672, 674.)

Statutory objective, as well as syntax, impels construction of the phrase "any such investigatory files" to embrace records of consumer complaints as well as records of investigations maintained for licensing purposes by agencies of the Department of Consumer Affairs.

Plaintiffs cite *Uribe* v. *Howie, supra,* 19 Cal.App.3d at pages 212-213, in support of their claim to disclosure. There the court held that information in public files became exempt as "investigatory" material only when the prospect of enforcement proceedings became concrete and definite. (See also *Bristol-Myers Company* v. *F.T.C., supra,* 424 F.2d at p. 939.) Plaintiffs point out that many complaints in the hands of the Bureau of Collection and Investigative Services are not the subject of current investigations. In *Uribe,* the record in question was not a complaint but a routine report in a public file. It could gain exemption not because of its content but because of the use to which it was put, that is, when and if it became part of an investigatory file. Here, by their very content, the documents are independently entitled to exemption as "records of complaints"; their exemption is not dependent upon the creation of an investigatory file.

## III

Plaintiffs assert a constitutional right to disclosure, immune from the statutory exemptions enumerated by the Public Records Act. They bottom their constitutional claim upon the First Amendment as applied to the state via the Fourteenth Amendment.

The guarantees of the First Amendment encompass not only freedom to communicate but peripheral rights to "the spectrum of available knowledge." (*Griswold* v. *Conn.* (1965) 381 U.S. 479, 482 [14 L.Ed.2d 510, 513-514, 85 S.Ct. 1678].) There is an undoubted connection between First Amendment freedoms and access to government files, especially those which record or illuminate official action. Nevertheless, judicial decisions have not yet assigned a constitutional ground for this right of access.[8] In a recent major test, the federal Supreme Court upheld a government claim of secrecy on statutory grounds without inquiry into possible constitutional counterclaims. (*EPA* v. *Mink* (1973) 410 U.S. 73 [35 L.Ed.2d 119, 93 S.Ct. 827].) A concurring opinion simply stated that the "case presents no constitutional claims." (*Id.* at p. 94 [35 L.Ed.2d at p. 136].)

---

[8]A number of writers have suggested constitutional theories as possible grounds for disclosure claims: Hennings, *Constitutional Law: The People's Right to Know* (1959) 45 A.B.A.J. 667; Parks, *The Open Government Principle: Applying the Right to Know Under the Constitution* (1957) 26 Geo.Wash.L.Rev. 1; Comment, *Access to Official Information: A Neglected Constitutional Right* (1952) 27 Ind.L.J. 209.

Access to government records is doubtless a fundamental interest of citizenship. Legislative and judicial vigor in protecting this interest may have played a role in postponing delineation of a constitutional right of access. This delineation may await a future clash of demands for disclosure with claims of executive secrecy, both posited on constitutional grounds. (See Warren, *Governmental Secrecy: Corruption's Ally* (1974) 60 A.B.A.J. 550.) At any rate, plaintiffs have apparently been unable to uncover any judicial authority for the proposition that the First Amendment precludes reasonable legislative demarcation of islands of nondisclosure.

If citizenship in a functioning democracy requires general access to government files, limited but genuine interests also demand restricted areas of nonaccess. Decisional law on the subject accepts the assumption that a statute calling for general disclosure may validly define reasonably restricted areas of nondisclosure, provided that the latter are justified by genuine public policy concerns. One concern is the privacy of citizens whose information gets into government files.

Overbroad claims to disclosure may threaten the privacy of individual citizens and accelerate the advent of the Orwellian state. As we have noted, subdivision (f) of section 6254 (fn. 3, *supra*) reflects a genuine legislative concern for the privacy of citizen complaints. The Legislature has balanced competing interests and demarcated a limited area of permissive nondisclosure. First Amendment considerations do not preclude this limited area of legislative choice. We find no constitutional invalidity in Government Code section 6254, subdivision (f).

## IV

Plaintiffs claim a special basis for disclosure—that the Bureau of Collection and Investigative Services routinely discloses complaints to the affected collection agencies. We sustain this claim.

Included in the record on appeal is a "complaint form" issued by the bureau, prepared for the signature of the complainant, revealing the complainant's name, address and a description of the complaint, together with the prepared statement: "A copy of this communication may be made available to the licensee concerned." In a declaration utilized in the trial court as part of the evidence, the chief of the bureau acknowledged a "common practice" to disclose complaints to the licensee with the complainant's permission for the purpose of permitting a response. The declaration made no mention of the prepared complaint form issued by the bureau; did not reconcile the complainant's alleged option of privacy with the prepared form's unconditional warning of revelation to the licensee;

failed to state whether the complainant's completion of the prepared form was a fixed prerequisite to inquiry into the collection agency's alleged wrongdoing.

The trial court entered findings of fact which omit any finding concerning the bureau's practice of revealing complaints to the affected licensees. The findings' silence on this score is significant, because, as we view the Public Records Act, the practice of disclosing complaints to the affected licensees destroys the privilege of confidentiality otherwise permitted by section 6254, subdivision (f).

As we have observed, section 6254 lists 14 categories of disclosure-exempt material. According to the last sentence of section 6254 (fn. 2, *supra*), these exemptions do not prevent an agency from opening its records to public inspection (unless some other statute forbids it). The last sentence of section 6254, as we view the legislative scheme, endows the agency with discretionary authority to override any of the 14 statutory exemptions when some dominating public interest favors disclosure. The 14 exemptions, then, are permissive, not mandatory; they permit nondisclosure but do not prohibit disclosure. When the agency exercises its permissive disclosure authority, public inspection follows.

The defendant state agencies assert authority to give collection agencies access to citizens' complaints and to deny access to plaintiffs. The claim is really one of power to indulge in selective disclosure. The Public Records Act impliedly but firmly negates that claim. After listing 14 permissible exemptions from disclosure, section 6254 (fn. 3, *ante*) declares that its provisions do not prevent "any agency from opening its records concerning the administration of the agency to public inspection."

The term *public inspection* necessarily implies general, nonselective disclosure. It implies that public officials may not favor one citizen with disclosures denied to another. When a record loses its exempt status and becomes available for public inspection, section 6253, subdivision (a), endows *every citizen* with a right to inspect it. By force of these provisions, records are completely public or completely confidential. The Public Records Act denies public officials any power to pick and choose the recipients of disclosure.[9] When defendants elect to supply copies of complaints to

---

[9]The federal Freedom of Information Act exempts from disclosure "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." (5 U.S.C. § 552(b)(7).) Under this provision the agency's disclosure of investigatory material to the person or firm under investigation requires it to make the material publicly available. (*Hawkes* v. *Internal Revenue Service* (6th Cir. 1972) 467 F.2d 787, 794-795; *Ditlow* v. *Volpe* (D.D.C. 1973) 362 F.Supp. 1321, 1325; *Wellford* v. *Hardin* (D.Md. 1970) 315 F.Supp. 175, 178.)

Commenting on the federal Freedom of Information Act, Professor Kenneth C.

collection agencies, the complaints become public records available for public inspection.

## V

■ Finally, defendants point to section 6255 (fn. 3, *supra*) as authority for nondisclosure. That section provides a residual statutory exemption where, "on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

Section 6255 entails a balancing of interests, initially by the public agency, then by the reviewing court (see, e.g., *Procunier* v. *Superior Court* (1973) 35 Cal.App.3d 207, 209 [110 Cal.Rptr. 529]; *Yarish* v. *Nelson* (1972) 27 Cal.App.3d 893, 902-903 [104 Cal.Rptr. 205]). Its remand for a clear overbalance on the side of confidentiality casts the burden of demonstration upon the proponent of confidentiality. To fulfill this burden defendants invoke the provisions of the Business and Professions Code which authorize licensing agencies of the Department of Consumer Affairs to take up consumer complaints with licensees in an attempt to resolve and mediate disputes.[10]

Davis observes: "The Act's sole concern is with what must be made public or not made public. The Act never provides for disclosure to some private parties and withholding from others. The main provision of section 3 [5 U.S.C., § 552] says that information is to be made available 'to the public' and the central provision of subsection (c) [*id.*, subsec. (a)(3)] requires availability of records to 'any person.'

"One consequence is legislative departure from the customary practices of normal people, who often disclose to those having a special reason for knowing and withhold from those who do not. . . . [U]nder the Act, Uncle Sam's information is either made public or not made public. The Act never requires it to be protected from all except those who have a special need for it.

"Another consequence of limiting the Act's provisions to disclosures 'to the public' and 'to any person' is to preclude the balancing of the interest of one private party against the interest of another private party. . . . [U]nder the Act such a balancing is inappropriate. All parties are equal in satisfying the words 'any person.' " (Davis, Administrative Law Treatise (1970 Supp.) § 3A.4, pp. 120-121.)

At another point he states: "The exemptions protect against required disclosure, not against disclosure." (*Id.*, § 3A.5, p. 122.)

[10]Business and Professions Code section 129, subdivision (c): "The [licensing agency] shall, when the board deems it appropriate, notify the person against whom the complaint is made of the nature of the complaint, may request appropriate relief for the complainant, and may meet and confer with the complainant and the licentiate in order to mediate the complaint. Nothing in this subdivision shall be construed as authorizing or requiring any board to set or to modify any fee charged by a licentiate."

Business and Professions Code section 325: "It shall be the duty of the director [of Consumer Affairs] to receive complaints from consumers concerning . . . (c) violations of provisions of this code relating to businesses and professions licensed by any agency of the department, and regulations promulgated pursuant thereto . . . ."

Business and Professions Code section 326, subdivision (a): "Upon receipt of any

These statutes, as defendants point out, manifest a legislative policy to encourage voluntary compliance by licensees as an alternative to formal discipline. Disclosure which helps a regulated person or firm to conform to the enforcement agency's understanding of the law serves the goals of law enforcement. (See *Hawkes* v. *Internal Revenue Service, supra,* 467 F.2d at p. 795.) Thus, in the balancing of interests, a public end is served by the mediation policy of the Department of Consumer Affairs and its licensing agencies.

Physical delivery to licensees of copies of consumer complaints is not an essential means to that end. The mediation statutes (fn. 10, *supra*) do not call for physical delivery, but only authorize notification "of the nature of the complaint." The licensing agencies may readily conduct mediation and investigation without a universal or selective practice of furnishing accused licensees with copies of consumer complaints. It is unrealistic to contend otherwise. The public interest in that practice does not outweigh (clearly or at all) the public interest in encouraging complaints by provisional assurances of confidentiality.

Section 6255, moreover, does not authorize the selective disclosure asserted by defendants. The Public Records Act is logically and cohesively designed to carry out its broad disclosure goal and its narrower objective of privacy. Defendants' claim of "clear" overbalance in favor of confidentiality accompanies their selective practice of disclosure to the accused licensees and nondisclosure to all others. That practice serves to discourage complaints because it defeats the provisional assurances of confidentiality which section 6254, subdivision (f), offers to complaining citizens. The last sentence of section 6254 denies public officials the power to favor one citizen with disclosures denied to another. Section 6255 no more authorizes selective disclosure than does section 6254. Neither statute withholds from one citizen what another citizen is permitted to see. Neither permits the public custodian to balance "the interest of one private party against the interest of another private party." (Davis, *op. cit.,* fn. 9, *supra.*)

## VI

 The Public Records Act (§ 6258) confers standing on "any person" to seek injunctive or declaratory relief to enforce his access to public records. As a matter of law defendants' practice of furnishing consumer complaints to the affected licensees was a material factor in the decision of the lawsuit. The trial court entered findings but omitted a finding on

complaint pursuant to Section 325, the director [of Consumer Affairs] may notify the person against whom the complaint is made of the nature of the complaint and may request appropriate relief for the consumer."

that material factor. Failure to find on a material issue is reversible error. (4 Witkin, Cal. Procedure (2d ed. 1971) p. 3139.) It is appropriate that the trial court reconsider plaintiffs' demand in the light of defendants' disclosure practices and in conformity with the statutory interpretation advanced in this opinion.

The Public Records Act utilizes the equity jurisdiction of the courts. In shaping its decree equity considers the interest of the general public. (*Loma Portal Civil Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548].) Because the issue is one of public law affecting a number of licensing agencies, these agencies, including defendants, should have an opportunity to reappraise their disclosure policies in the light of this opinion. The trial court should provide defendants that opportunity.

The judgment is reversed and the cause remanded to the trial court for further proceedings.

Janes, J., concurred.

**REGAN, J.**—I dissent. The facts are not in dispute. The plaintiffs have made demand on the Bureau of Collection Agencies for access to all consumer complaints filed with the bureau against licensed collection agencies. Plaintiff's stated purpose is that access to the consumer complaints is required so they can publish this information in the Black Panther newspaper, rating the collection agencies according to the number and seriousness of the complaints.

The request of plaintiffs to make available to them all complaints against collection agencies was refused by the Bureau of Collection and Investigative Services on the ground that the complaints, together with investigative material appurtenant thereto, are not public records; that such is specifically exempt from disclosure under Government Code section 6254, subdivision (f). The deputy chief further advised plaintiffs that where a complaint has resulted in formal disciplinary proceedings, the documents relating to those proceedings are a matter of public record and are available to plaintiffs.

The bureau does not disclose the complaints to the public because many of those filing complaints indicate they are submitted in confidence and that before disclosing the contents of the complaint to the collection agency for purposes of response to the allegations, they obtain the expressed written consent of the complainant. From previous experience, the bureau learned that the premature disclosure of information contained in a complaint while the investigation was in progress afforded the licensee the

opportunity to suppress evidence, and that many consumer complaints are false and malicious.

Government Code section 6253 provides that "Public records are open to inspection at all times during the office hours of the state or local agency and every citizen has a right to inspect any public record, except as hereafter provided."[1]

Government Code section 6254 lists various documents, records, and other items that are exempt from disclosure under the Public Records Act. The controversy in issue is whether consumer complaints against collection agencies are exempt under subdivision (f) of section 6254, which provides that "Records of complaints to or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes . . ." are exempt from requirement of disclosure. If not, can the bureau withhold these consumer complaints from plaintiffs under the alternative provision in Government Code section 6255 which provides that "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

The trial court determined that the consumer's complaints were exempt from public disclosure under section 6254, subdivision (f), of the Government Code.

Business and Professions Code section 6925 provides that any person aggrieved may file with the Bureau of Collection and Investigative Services a written statement alleging acts of misconduct or violations of collection agencies which shall be referred by the chief of the bureau for investigation and report. Section 6947 of the Business and Professions Code lists various acts which a collection agency is prohibited from doing. Section 6863 of the Business and Professions Code authorizes the chief to enforce such rules and regulations as may be reasonable or necessary for the protection of the public. The wilful violation of any rules and regulations established for the conduct of a licensee is sufficient ground for the revoca-

---

[1]The declaration of the Legislature's purpose of enacting the Public Records Act is found in Government Code section 6250, which states that: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."

tion of his license or other disciplinary action. (Bus. & Prof. Code, §§ 6863, 6930.) Additionally, the Director of Consumer Affairs, one of the named defendants, is authorized to transmit any complaint he considers to be a valid charge of a violation of law to any appropriate law enforcement agency, or request the Attorney General to undertake appropriate legal action. (Bus. & Prof. Code, § 326.)

Thus, under the above provisions, a consumer's complaint initiates an investigation by the bureau of a collection agency which could result in the revocation of the agency's license after an administrative hearing as provided in the Administrative Procedure Act. (Gov. Code, § 11500 et seq.) Presumably the original written consumer's complaint would be included in the investigatory file of the bureau. Even if the initial investigation establishes that there is no foundation or basis for the complaint, until this conclusion is reached, the bureau is, pursuant to section 6925 of the Business and Professions Code, investigating the matter so that file too would be considered an investigatory file within the meaning of government Code section 6254, subdivision (f).

It has been said that an investigatory file exists whenever information is collected actively or passively for the purpose of determining whether or not a license should be revoked or whether disciplinary proceedings should be initiated. (53 Ops.Cal.Atty.Gen. 136, 150.)

Plaintiffs in urging a special basis for disclosure, namely, that the Bureau of Collection and Investigative Services routinely disclose complaints to the affected collection agencies, points to a statement accompanying the bureau's "complaint form" stating, "A copy of this communication may be made available to the licensee concerned." The majority concludes that Government Code section 6254 lists 14 categories of disclosure-exempt material; that such exemptions are permissive, not mandatory; they permit disclosure but do not prohibit it; and, that when the agency exercises its permissive disclosure authority, public inspection follows. (Gov. Code, § 6254, subd. (f).) I cannot so conclude. The practice of disclosing complaints to affected licensees is an integral and necessary procedure to properly investigate the charges in the complaint filed. How else can this state agency process the claim of an unlawful practice perpetrated upon an individual unless the factual situation in each case is checked, which necessitates, in effect, a confrontation of the licensee with the charge made against it. Such practice should not of itself cause the record to lose its exempt status and become at that point available for public inspection. The mere filing of a consumer complaint containing charges, true or false, should not trigger the publication thereof.

Even if it be deemed that consumers' complaints do not fall within the exemption of section 6254, subdivision (f), I believe the bureau has sustained its burden in justifying the nondisclosure of the consumers' complaints it receives by showing that the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record.

As the bureau claims, it would be a deterrent to those who may have a legitimate complaint if they knew that their complaint was to be made public. (See *Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 567-569 [7 Cal.Rptr. 109, 354 P.2d 637].) Moreover, to disclose a consumer's complaint that alleges an offense or violation of a rule or law which later is proven to be unfounded is unjust to the agency subject to the complaint.

In the instant case, the public interest served by not making the consumers' complaints public clearly outweighs the public interest served by disclosure of the record. (See *Chronicle Pub. Co.* v. *Superior Court, supra,* 54 Cal.2d at pp. 566-569. See also *Yarish* v. *Nelson* (1972) 27 Cal.App. 3d 893, 901-903 [104 Cal.Rptr. 205], in which the court denied the news media the right to prison files.)

I would affirm the judgment.

Respondents' petition for a hearing by the Supreme Court was denied December 18, 1974. Richardson, J., did not participate therein.