[Civ. No. 16711. Third Dist. Mar. 6, 1979.]

NORTHERN CALIFORNIA POLICE PRACTICES PROJECT et al., Plaintiffs and Appellants, v.
GLENDON CRAIG, Individually and as Commissioner, etc., et al., Defendants and Respondents.

**118**

## Counsel

Amitai Schwartz, Alan L. Schlosser, Margaret C. Crosby, Charles Marson, Vilma S. Martinez, Morris J. Baller, John H. Erickson, Alice Beasley, Lowell Johnston and Anthony G. Amsterdam for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Robert L. Mukai, Deputy Attorney General, for Defendants and Respondents.

## Opinion

**EVANS, J.**—Plaintiffs appeal from an order (judgment) directing defendants (California Highway Patrol [CHP] and certain of its officers) to disclose only limited portions of the California Highway Patrol manual and officer's guide pursuant to the Public Records Act (PRA) (Gov. Code, § 6250 et seq.).[1] Plaintiffs are a state taxpayer (see Code Civ. Proc., § 526a) David M. Fishlow, an unincorporated association, the Northern California Police Practices Project (Project), and the American Civil Liberties Union.

The material sought by plaintiffs is utilized by the patrol in training its officers and is compiled in four separate documents: (1) "Enforcement Tactics" (HPG 70.6) explaining the general objectives of the patrol, officer investigative use of senses, enforcement procedures including

---

[1]Unless otherwise noted, all subsequent references will be to the Government Code.

officer-violator contact, search and handcuffing techniques, the use of firearms, patrol vehicle operations, and hostage incidents; (2) "Weapons Training Manual" (HPM 70.8) describing weapon utilization policies, weapon training and practice, maintenance, chemical agent transportation and use; (3) "Personal Weapons and Physical Methods of Arrest Guide" (HPG 70.13) depicting methods of unarmed combat, and detailing methods of arrest, search, and handcuffing techniques; and (4) "Enforcement Policy" contained in General Order 100.68. That order is merely a cover document describing speed law enforcement guidelines, Vehicle Code enforcement, and assistance to motorists. To that order there are 18 annexes which detail CHP responsibilities (Annex A), excessive speed enforcement guidelines (Annex B), minimum speed enforcement guidelines (Annex C), off-road vehicle enforcement policy (Annex D), freeway stopping of patrol vehicle (Annex E), transport of ill and injured persons (Annex F), arrest policy and procedures (Annex G), release from arrest procedures (Annex H), arrest, handcuffing, and search techniques (Annex I), chain and snow tire enforcement policy (Annex J), illegal alien entry arrests (Annex K), county ordinance enforcement policy (Annex L), response to private citizen arrests (Annex N), United States mail carrier enforcement policy (Annex O), controlled substance arrest (Annex P), pursuit policies (Annex Q), bicycle racing (Annex S), and blocking railroad crossings (Annex T).

The CHP rejected plaintiffs' request for access to the material, asserting that it dealt with officers' safety and internal security, and as such, was exempt from disclosure pursuant to the terms of section 6254, subdivision (f), and this action ensued.

During trial, an adversarial *in camera* proceeding was held; at that hearing the commander of internal affairs for the CHP described the nature of the materials and explained the basis for the claimed exemption to be that the material described vehicle stop techniques, specific methods of arrests, handcuffing and search procedures, when the patrol would stop speed violators, when it would institute and continue pursuits, and described officer positions and weapon use during attempted arrests. The CHP asserted that disclosures of the materials would increase the tendency for highway users to violate the speed laws, increase attempted escapes from arrest situations necessitating pursuits, and would enable miscreants to counter law enforcement methods used in search, arrest, and handcuffing, thus endangering both the officers involved and the public. Following the *in camera* hearing, the trial court ordered the

disclosure of General Order 100.68, Annexes A, E, F, H, J, K, L, N, O, P, S, and T, and found all remaining materials to be matters related to security procedures, and sustained the CHP claim of exemption. Although noting that some portions of the nondisclosed material did not deal with security procedures, and are matters of common sense,[2] "the gravamen of the document" was found to deal with the protection and security of the officers and others, and the trial court refused to order disclosure of the documents or the segregation and disclosure of any nonsensitive material of common knowledge.

With the provisions of section 6254, subdivision (f), in mind, our independent review of the documents reveals the trial court order to be correct and a proper exercise of its discretion.

The PRA contains a broad statement of its purpose and intent and briefly summarized is that an individual's right to privacy requires that access to public information concerning the conduct of the "people's" business is a fundamental and necessary right of the citizens of this state.

The PRA, like the federal Freedom of Information Act upon which it is patterned (see *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 652 [117 Cal.Rptr. 106]), states its general policy to be to favor disclosure of public records, and support for refusal to disclose information "must be found, if at all, among the specific exceptions to the general policy that are enumerated in the Act." (*State of California* ex rel. *Division of Industrial Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778, 783 [117 Cal.Rptr. 726].)

Plaintiffs assert that the public has a legitimate interest in obtaining information regarding the CHP procedures described in the documents in order that members of the public may properly assess the overall reasonableness of those procedures thereby enabling those persons interested to determine whether to file complaints for claimed officer misconduct. The argument asserted by plaintiffs is virtually identical to that previously made and partially rejected in *Cook* v. *Craig* (1976) 55 Cal.App.3d 773 [127 Cal.Rptr. 712]. In that case this court acknowledged that section 6254, subdivision (f), does exempt from disclosure certain internal investigative or security material and refused to order the CHP to

---

[2]The trial court, in commenting on the nonsensitive material, stated, "[t]here may be some things in there that are really of no consequence such as you should keep your gun oiled, free of rust, that considering . . . the . . . context . . . it would seem . . . no more than catering to officiousness to require disclosure."

disclose for inspection specified documents found to deal with security matters, but did order the disclosure of regulations which established procedures to be utilized in the investigation of citizen complaints. The court recognized that investigatory files and records of complaints are clearly exempt from disclosure under subdivision (f) of section 6254. By the terms of the statute the same is true of material dealing with security procedures of any police agency. The court affirmed that exemption when it stated at page 784: "Accordingly, we hold that the CHP is required by the PRA to make available for public inspection and copying its *procedural regulations* governing the investigation of citizen complaints about the conduct of CHP personnel; . . ." (Italics added.) The matters ordered disclosed were not matters dealing with security. They were internal procedures to be followed after receipt of a citizen's complaint.

I

Plaintiffs contend that the CHP regulations should be disclosed because the public, including plaintiffs, "without knowing what bench-marks the CHP uses in substantively determining whether officer conduct is right or wrong, . . . lack the effective means of addressing complaints to the operational directives which bear upon particular conduct in question. In short, potential complainants are deprived of knowing the secret law of the CHP." Plaintiffs suggest that disclosure of *all* rules regulating conduct of highway patrol officers would permit the public to express their needs and concerns in a meaningful way; that it would inspire trust and confidence and benefit, not hurt law enforcement.

That suggestion must be rejected for its total lack of statutory support. Plaintiffs would have this court judicially repeal, under the guise of statutory interpretation, the exemptions provided by the PRA. (§ 6254, subd. (f).) We decline to do so. ■ We are constrained only to carry out the stated and obvious intent of the Legislature (see *People* v. *Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274]), and must consider all matters including the restrictions contained in the act.

During the *in camera* proceeding, the trial court reviewed and analyzed all of the material requested by plaintiffs and found the materials not ordered disclosed to be exempt as matters dealing with security procedures of the CHP, a state police agency. The assertion that the trial court order exempting the material is overbroad does not find support in the record. Our review of the requested records reveals them

to deal with security and safety procedures utilized by the CHP in the performance of its police function. Such material is clearly exempt from disclosure by the terms of section 6254, subdivision (f).

Plaintiffs' argument is essentially one of insufficiency of the evidence to justify the order denying disclosure of exempt information unaccompanied by a fair statement of legal reasons compelling disclosure of the exempt materials. As such, the argument is entitled to no consideration when it is apparent as it is here that overwhelming evidence supports the order of the trial court. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Haynes* v. *Gwynn* (1967) 248 Cal.App.2d 149, 151 [56 Cal.Rptr. 82].)

We conclude that if plaintiffs wish to question the propriety of law enforcement conduct, they may do so, and their right to proceed with such evaluation is not dependent upon revelation of the content of the security regulations adopted by the CHP.

## II

Following the trial court's order of disclosure, plaintiffs asked that the court set forth in findings of fact its reasons for refusing to order disclosure of all requested materials. The trial court properly refused the request.

The fundamental question presented at trial was the propriety of the claim of exemption. ■ As resolution of the question was dependent on the content of the material, viewed in the light of statutory provision (§ 6254, subd. (f)), the question was one of law, not fact. As such, findings are not required. (*City of Alameda* v. *City of Oakland* (1926) 198 Cal. 566, 578 [246 P. 69]; *Martin* v. *Smith* (1960) 184 Cal.App.2d 571, 579 [7 Cal.Rptr. 725]; *Jenner* v. *City Council* (1958) 164 Cal.App.2d 490, 501 [331 P.2d 176]; *Wadler* v. *Justice Court* (1956) 144 Cal.App.2d 739, 744 [301 P.2d 907].) ■ Moreover, as a special proceeding authorized by a specific statute (§ 6258), findings are not required as the authorizing statute fails so to provide. (*Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 327-328 [74 P.2d 761]; *Taliaferro* v. *Hoogs* (1965) 236 Cal.App.2d 521, 530 [46 Cal.Rptr. 147]; *Adoption of Hertz* (1964) 227 Cal.App.2d 269, 272 [38 Cal.Rptr. 618]; *Adoption of Pitcher* (1951) 103 Cal.App.2d 859, 864 [230 P.2d 449].)

*Black Panther Party* v. *Kehoe, supra,* 42 Cal.App.3d 645 relied upon by Project in its demand for findings is inapposite. In *Black Panther Party,* it could not be determined from the record on appeal whether the trial court had considered a material factual issue relating to a possible waiver of the claim of confidential investigative records through disclosure of portions of the records to the public. *(Id.,* at p. 656.) In contra-distinction, the present record demonstrates that the trial court fully considered all relevant issues and determined them to be legal, not factual. ■ Plaintiffs' only claim of waiver of confidentiality related to disclosure of indexes to the regulations to one of Project's agents during discovery. This access is conceded to have occurred so that the parties and the court at trial could more readily determine the relevancy of the claim of exemption. The limited discovery was not a waiver of the confidential nature of the material. The only disputed issue at trial was whether the documents were, in fact, within the exemption provided by Government Code section 6254, subdivision (f). The issue was one of law, not fact, obviating any requirement of findings of fact.

## III

■ Plaintiffs contend that the trial court's refusal to edit nonsensitive materials contained in the documents and order them disclosed constitutes reversible error. We agree. The PRA is suffused with indications of a contrary legislative intent. "[A]ccess to *information* concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Italics added; Gov. Code, § 6250.) " 'Public records' includes any writing *containing information* relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (Italics added; Gov. Code, § 6252, subd. (d).) "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (Gov. Code, § 6255.)

The PRA is modeled upon the federal Freedom of Information Act (FOIA) *(Cook* v. *Craig, supra,* 55 Cal.App.3d at p. 781). Like the PRA, "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *(Mead Data Cent., Inc.* v. *U. S. Dept. of*

*Air Force* (D.C.Cir 1977) 566 F.2d 242, 260.) While it is true that Congress amended the FOIA in 1974 expressly to require disclosure of "[a]ny reasonably segregable portion of a [public] record" (5 U.S.C. § 552(b)), the amendment only codified the interpretation theretofore accorded the act by the federal courts (see, e.g., *EPA* v. *Mink* (1973) 410 U.S. 73, 93 [35 L.Ed.2d 119, 135, 93 S.Ct. 827]; *Mead Data Cent., Inc.* v. *U. S. Dept. of Air Force, supra,* 566 F.2d at p. 260, fn. 51). Similarly, the PRA has been judicially interpreted to require segregation of exempt from nonexempt materials contained in a single document (*American Federation of State etc. Employees* v. *Regents of University of California* (1978) 80 Cal.App.3d 913, 919 [146 Cal.Rptr. 42]).

We conclude that where nonexempt materials are not inextricably intertwined with exempt materials and are otherwise reasonably segregable therefrom, segregation is required to serve the objective of the PRA to make public records available for public inspection and copying unless a particular statute makes them exempt. (*Cook* v. *Craig, supra,* 55 Cal. App.3d at p. 783.)

Undoubtedly, the requirement of segregation casts a tangible burden on governmental agencies and the judiciary. Nothing less will suffice, however, if the underlying legislative policy of the PRA favoring disclosure is to be implemented faithfully. If the burden becomes too onerous, relief must be sought from the Legislature.

The order (judgment) is reversed and the cause remanded to the trial court for segregation and disclosure of nonexempt information located in otherwise exempt documents.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied March 30, 1979, and appellants' petition for a hearing by the Supreme Court was denied May 3, 1979.