TO BE FILED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-702 |
| of | : | |
| | : | October 13, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE ROB HURTT, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. What constitutes the application period during which absentee ballot applications are to be processed by the county clerk?

2. May absentee ballot applications which are received prior to the application period be processed when received?

3. May candidates for office have access to unprocessed absentee ballot applications?

4. Due to staffing and security needs, may a county clerk refuse access to unprocessed absentee ballot applications by candidates for office?

5. If one candidate for office has been given access to unprocessed absentee ballot applications, must all candidates for office be granted access regardless of staffing limitations?

6. May a county refuse to give access to unprocessed absentee ballot applications by disclosing instead, after the applications have been processed, the names and addresses of those requesting the ballots?

CONCLUSIONS

1. The application period during which absentee ballot applications are to be processed by the county clerk covers the period between the 29th and 7th day prior to an election.

2. Absentee ballot applications which are received prior to the application period may not be processed when received.

1.                                                                 93-702

3. Candidates for office may have access to unprocessed absentee ballot applications.

4. Due to staffing and security needs, a county clerk may temporarily refuse access to unprocessed absentee ballot applications by candidates for office.

5. If one candidate for office has been given access to unprocessed absentee ballot applications, all candidates for office must be granted access to the applications unless staffing limitations reasonably prevent immediate access.

6. A county may not refuse to give access to unprocessed absentee ballot applications by disclosing instead, after the applications have been processed, the names and addresses of those requesting the ballots.

ANALYSIS

The six questions presented for resolution concern whether members of the public, particularly those running for public office, may inspect applications filed by registered voters to obtain absentee ballots prior to an election. We conclude generally that the applications are public records that must be made available for inspection.

1. Application Period

The first question to be answered concerns the "application period" during which the applications for absentee ballots are to be processed by election officials. Pursuant to Elections Code section 1002,[1] we conclude that the processing period is between the 29th and the 7th day prior to an election.

Section 1003 declares that "[t]he absentee ballot shall be available to any registered voter." Section 1006 sets forth the contents of an absentee ballot application:

"(a) Any printed application which is to be distributed to voters for requesting absent voter ballots shall contain spaces for the following:

"(1) The printed name and residence address of the voter as it appears on the affidavit of registration.

"(2) The address to which the ballot is to be mailed.

"(3) The voter's signature.

"(4) The name and date of the election for which the request is to be made.

"(5) The date the application must be received by the clerk.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) The application shall be attested to by the voter as to the truth and correctness of its content, and shall be signed under penalty of perjury."

_____

[1]All references to the Elections Code prior to footnote 4 are by section number only.

An absentee ballot application received by an election official "within the proper time" is processed under the terms of section 1007 as follows:

"(a) Upon receipt of any absentee ballot application signed by the voter, which arrives within the proper time, the elections official should determine if the signature and residence address on the ballot application appear to be the same as that on the original affidavit of registration. . . .

"(b) If the official deems the applicant entitled to an absent voter's ballot he or she shall deliver by mail or in person the appropriate ballot. The ballot may be delivered to the applicant, his or her spouse, or his or her parent if the applicant is unmarried. . . .

"(c) If the official determines that an application does not contain all of the information prescribed in Section 1002 or 1006, or for any other reason is defective, and the election official is able to ascertain the voter's address, the official shall, within one working day of receiving the application, mail the voter an absent voter's ballot together with a notice. The notice shall inform the voter that the voter's absent voter's ballot shall not be counted unless the applicant provides the official with the missing information or corrects the defects prior to, or at the time of, receipt of the voter's executed absent voter's ballot. . . ."

Section 1010 states that "[b]efore the election the elections official shall send to the inspector of each precinct in his county or city a list of the voters in that precinct applying for and receiving ballots . . . ." Section 1013 governs the return of an absentee ballot:

"All absentee ballots cast under the provisions of this division shall be voted on or before the day of the election. After marking the ballot, the absent voter shall either: (1) return the ballot by mail or in person to the official from whom it came or (2) return the ballot in person to any member of a precinct board at any polling place within the jurisdiction. . . ."

With this statutory overview in mind, we return to the question of what constitutes the "application period" during which absentee ballot applications are to be processed. Section 1002 states:

"Except as provided in Chapter 7 (commencing with Section 1450), application for an absent voter's ballot shall be made in writing to the elections official having jurisdiction over the election between the 29th and the 7th day prior to the election. The application shall be signed by the applicant and shall show his place of residence. Any applications received by the elections official prior to the 29th day shall be kept and processed during the application period."[2]

The clear and unambiguous wording of section 1002 provides the answer to the first question. The so-called "application period" is between the 29th day and the 7th day before an election.

The rules to be applied in construing the terms of a statute are well settled. "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v.

_____

[2]"Chapter 7" provides for permanent absent voter status for disabled voters. Such is not germane herein.

*Snowden* (1992) 2 Cal.4th 556, 562.) "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'" (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209.) "Where reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary." (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 459.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "`[C]ourts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.'" (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097.)

Following the applicable rules of statutory construction, we conclude that the application period during which absentee ballot applications are to be processed by the county clerk covers the period between the 29th and the 7th day prior to an election as set forth in section 1002.

2.     Applications Received Before the 29th Day

The second question posed is whether absentee ballot applications received prior to the application period, e.g, on the 40th day prior to an election, may be processed by the county clerk when received. We conclude that they may not be processed earlier than the application period.

As previously quoted, section 1002 declares in part: "Any applications received by the elections official prior to the 29th day shall be kept and processed during the application period." The language of section 1002 is clear and unambiguous. We know of no reason that would prevent application of the statute's express terms.[3]

In answer to the second question, therefore, we conclude that absentee ballot applications which are received prior to the application period may not be processed when received.

3.     Inspection of Unprocessed Applications

The third question presented concerns absentee ballot applications that have been received but not yet processed by the county clerk. May candidates for office inspect such applications? We conclude generally that they may.

The right of any person to inspect public records is governed by the California Public Records Act. (Gov. Code, §§ 6250-6268; "PRA.")[4] Section 6253 provides in part:

"(a) Public records are open to inspection at all times during the office hours of the state and local agency and every person has a right to inspect any public record, except as hereafter provided. Every agency may adopt regulations stating the

---

[3]Of course, the consequences of processing the applications prior to the 29th day would present a different issue. Section 1002 appears to be "directory" rather than "mandatory" for purposes of determining such consequences. (See *Gooch* v. *Hendrix* (1993) 6 Cal.4th 266, 278, fn. 7; *Edwards* v. *Steele* (1979) 25 Cal.3d 406, 409-413; *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 931; 71 Ops.Cal.Atty.Gen. 344, 349-351 (1988).)

[4]All further section references are to the Government Code unless otherwise indicated.

procedures to be followed when making its records available in accordance with this section . . . .

> "(b)  Guidelines and regulations adopted pursuant to this section shall be consistent with all other sections of this chapter and shall reflect the intention of the Legislature to make the records accessible to the public.  The guidelines and regulations adopted pursuant to this section shall not operate to limit the hours public records are open for inspection as prescribed in subdivision (a)."[5]

"Public records" for purposes of the PRA are defined in section 6254, subdivision (d) as follows:

> "`Public records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics. . . ."

> Absentee ballot applications, when received by election officials, meet the definition of public records contained in section 6254. (See generally, *Register Div. of Freedom Newspapers, Inc. v. Orange County* (1984) 158 Cal.App.3d 893.) Accordingly, unless an exception may be found in the PRA, *any* person has the right to inspect them pursuant to section 6253.  No one, including candidates at the election involved, would have a greater right over any one else. (See *Los Angeles Police Dept.* v. *Superior Court* (1977) 65 Cal.App.3d 661, 668; *Black Pather Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 656.)

> An examination of the PRA discloses three provisions specifically applicable to election records.  Under section 6253.5 records pertaining to initiative, referendum, recall and other specified election petitions are deemed not to be public records.  Section 6253.6 imposes confidentiality upon the identity of persons who have requested bilingual ballots or ballot pamphlets pursuant to state or federal law.  Under section 6254.4 the confidentiality of voter registration information for judges, district attorneys, and certain other public officials may be maintained when so requested.[6]

> As to more general exemptions contained in the PRA, section 6254 lists some 24 categories of records which need not be disclosed to the public.  Of possible relevance to our inquiry here is subdivision (k) of section 6254, which exempts from disclosure:

> "Records the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege."

Besides Elections Code section 615, only one statutory provision outside the PRA refers to the confidentiality of election records.  Section 511.5 of the Elections Code allows a person to obtain a court order declaring his or her voter registration information confidential if life threatening circumstances exist with respect to the person.

> Finally, as to general exemptions contained in the PRA, section 6255 provides:

---

[5]"Local agency" includes a city and a county, among other local public agencies. (§ 6252, subd. (b).)

[6]Section 6254.4 is further implemented by Elections Code section 615.

"The agency shall justify withholding any records by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

The second portion of section 6255, the so-called "catch all" provision, is applicable to the disclosure of the *content* of a record, not the *timing* of the disclosure. It requires a balancing test, with disclosure being favored. (See generally, *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1337-1346; *Register Div. of Freedom Newspapers, Inc. v. County of Orange, supra*, 158 Cal.App.3d at pp. 908-910; *New York Times Co. v. Superior Court* (1990) 218 Cal.App.3d 1579, 1584-1585.)

Hence, as a general proposition, absentee ballot applications (whether processed or unprocessed) are public records, and under the terms of the PRA are open to public inspection. This conclusion, however, must be tempered by the "rule of reason" stated in *Bruce v. Gregory* (1967) 65 Cal.2d 666. In *Bruce* the Supreme Court concluded with respect to the predecessor statutes of the PRA:

"We therefore hold that the rights created by section 1892 of the Code of Civil Procedure and section 1227 of the Government Code, are, by their very nature, not absolute, but are subject to an implied rule of reason. Furthermore, this inherent reasonableness limitation should enable the custodian of public records to formulate regulations necessary to protect the safety of the records against theft, mutilation or accidental damage, to prevent inspection from interfering with the orderly function of his office and its employees, and generally to avoid chaos in the record archives." (*Id.*, at p. 676.)

Most germane to our inquiry herein is the following language quoted in *Bruce* from an Arkansas case:

". . . `"Without doubt, reasonable restrictions and conditions may be imposed with respect to the right to use public records. Even in the absence of any specific restrictions, the right implies that those exercising it shall not take possession of the registry or monopolize the record books so as unduly to interfere with the work of the office or with the exercise of the right of others, and that they shall submit to such reasonable supervision on the part of the custodian as will guard the safety of the records and secure equal opportunity for all."'" (*Id.,* at pp. 675-676.)

We have previously followed the language of *Bruce* in construing the requirements of the PRA. (See 64 Ops.Cal.Atty.Gen. 317, 321 (1981); 64 Ops.Cal.Atty.Gen. 186, 190 (1981); 53 Ops.Cal.Atty.Gen. 136, 150-151 (1970); *Cf. Rosenthal* v. *Hansen* (1973) 34 Cal.App.3d 754, 760-761.)

Returning to the question of a person's right to inspect absentee ballot applications, we believe that the directive contained in section 1007 of the Election Code must be considered. As previously quoted, subdivision (c) of the statute states in part:

"If the official determines that an application does not contain all of the information prescribed in Section 1002 or 1006, or for any other reason is defective, and the election official is able to ascertain the voter's address, the official shall, *within one working day of receiving the application*, mail the voter an absent voter's ballot together with a notice. . . ." (Emphasis added.)

Accordingly, the law directs election officials to examine absentee ballot applications within one day after receipt.[7]  Such administrative duties may impact the right of a member of the public to inspect unprocessed applications.[8]  As we noted in 34 Ops.Cal.Atty.Gen. 286, 287 (1959), cited with approval in *Bruce,* regarding the inspection and copying of records in the custody of a county recorder:

> "This conclusion must be tempered, however, by the rule of reasonableness that one who is charged with the custody of records must have control of his office and of the records therein, and must, therefore, have some discretion in determining the manner in which persons may inspect and copy such records (26 Ops.Cal.Atty.Gen. 136).  Since the duty of the custody of records on file in the recorder's office is the personal duty of the recorder (sec. 27231), all decisions necessary to the proper performance of this duty should be made by the recorder himself. . . ."

Likewise, although absentee ballot applications (processed or unprocessed) are public records subject to inspection, election officials must be able to exercise discretion in determining the time and manner in which inspections may take place so that the inspections do not interfere with the performance of official duties.

In answer to the third question, therefore, we conclude generally that candidates for office (as well as other members of the general public) may have access to absentee ballot applications before they are processed by the county clerk.

4.      Staffing and Security Needs

The fourth question is similar to the third and is answered by the same legal rationale. Due to staffing and security needs, may a county clerk refuse to give access to unprocessed absentee ballot applications by candidates for office?  We conclude that the circumstances of each situation must be examined to determine whether a temporary prohibition against access would be reasonable.

As indicated in response to the third question, unprocessed absentee ballot applications are public records subject to inspection under the PRA by any member of the general public, including candidates for office.  Staffing and security needs, however, may temporarily prevent public inspection and copying so that those taking possession of the applications will not "`"unduly . . . interfere with the work of the office or with the exercise of the right of others;"'" reasonable efforts may be undertaken to "`"guard the safety of the records and secure equal opportunity for all."'" (*Bruce* v. *Gregory, supra,* 65 Cal.2d at p. 676.)

In answer to the fourth question, therefore, we conclude that due to staffing and security needs, a county clerk may temporarily refuse to give access to unprocessed absentee ballot applications by candidates for office and other members of the general public.  Each situation must be examined in light of the individual circumstances presented.

---

[7]We do not view such preliminary examination for defects as the "processing" of the applications. The latter includes delivery of the absentee ballots between the 29th and the 7th day prior to the election, while the former may occur before the 29th day.  In this manner, the directives of sections 1002 and 1007 may be construed together and harmonized.

[8]We are informed that in Los Angeles County, for example, as many as 30,000 applications have been delivered to the registrar's office in a single day.

5.      Equal Access

The fifth question posed is whether all candidates for elective office must be given access to unprocessed absentee ballot applications if one candidate has been given access to the applications. We conclude that equal opportunity for all persons is the guiding principle to be applied.

As set forth in response to the third and fourth questions, election officials may take reasonable steps to (1) protect the safety of the applications, (2) prevent interference with the orderly performance of administrative duties, (3) and prevent any person from monopolizing possession of the applications to the exclusion of others.

It may be in a particular situation that a candidate for office is given access to unprocessed applications and the circumstances reasonably dictate that the other candidates must be temporarily denied access due to the performance of administrative duties. However, the general principle to be applied as set forth in *Bruce* and our prior opinions is that all persons are to be given equal access to the unprocessed applications.

In answer to the fifth question, therefore, we conclude that if one candidate for office has been given access to unprocessed absentee ballot applications, all candidates for office must be granted access to the applications unless staffing limitations reasonably prevent immediate access.[9]

6.      Alternative Release of Names

The final question is whether a county may refuse to give access to unprocessed absentee ballot applications by giving access instead, after the applications have been processed, to the names and addresses of those persons requesting the ballots. We conclude that the proposed alternative would not meet the requirements of the PRA.

As previously noted, election officials are required to prepare a list of persons seeking absentee ballots so that the inspector in each election precinct is informed "of the voters in that precinct applying for and receiving ballots . . . ." (Elec. Code, § 1010.) May this information be disclosed after the applications are processed instead of allowing access to the unprocessed applications?

Nothing in the PRA suggests that the disclosure of a later prepared public record may take the place of disclosing a different public record requested at an earlier date. While the same type of information may be contained in the two records, disclosure under the PRA is required for *all* public records defined therein unless a specific exemption may be found.[10] Here, we know of no grounds upon which to assert that allowing access to the compiled lists of those submitting the applications may serve as a substitute for the inspection of the unprocessed applications.

---

[9]It should be noted that responses to requests for copies of public records must be provided within 10 days (§ 6256), with an additional 10 working days allowed for specified, extraordinary circumstances (§ 6256.1).

[10]When a copy of a public record is requested, "an exact copy shall be provided unless impracticable to do so." (§ 6256.)

In answer to the sixth question, therefore, we conclude that a county may not refuse to give access to unprocessed absentee ballot applications by disclosing instead, after the applications have been processed, the names and addresses of those requesting the ballots.

* * * * *