[Civ. No. 21124. Third Dist. Aug. 26, 1985.]

CITIZENS FOR A BETTER ENVIRONMENT et al.,
Plaintiffs and Appellants, v.
DEPARTMENT OF FOOD AND AGRICULTURE,
Defendant and Respondent.

**COUNSEL**

Nicholas C. Arguimbau for Plaintiffs and Appellants.

John K. Van de Kamp and George Deukmejian, Attorneys General, R. H. Connett, Assistant Attorney General, and Robert L. Mukai, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**BLEASE, J.**—Plaintiffs appeal from the judgment denying them disclosure of records requested under the California Public Records Act. (Gov. Code, § 6250 et seq.)[1] The records sought are California Department of Food and Agriculture (hereafter Department) inspection and monitoring reports on county enforcement of pesticide use laws. Disclosure was denied on the ground that the reports are exempt from disclosure under section 6254, subdivision (a). We will reverse the judgment.

The Department failed to show that certain records were "not retained . . . in the ordinary course of business"; these records must be disclosed in their entirety. Regarding the remaining records, we hold that only the recommendations to the Department concerning the action to be taken are exempt but that the factual reports of the investigations and what was found must be disclosed.

FACTS

The Department has the primary responsibility for enforcement of the federal pesticide use law pursuant to an agreement with the administrator of the environmental protection agency authorized by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) (7 U.S.C. §§ 136-136y; § 136u (a)(1).) It shares this responsibility with the agricultural commissioner of each county acting under its "direction and supervision." (Food

---

[1] All references are to the Government Code unless otherwise noted.

& Agr. Code, § 11501.5). The instructions and directions of the Department "govern the procedure to be followed by the commissioner in the discharge of his duties." (Food & Agr. Code, § 2281.)

Citizens For a Better Environment (Citizens) is a national environmental organization which claims a membership of 6,000 persons in the San Francisco Bay Area. Dreistadt is its employee. In October 1980 Citizens published a report by Dreistadt critical of the pesticide enforcement program in Contra Costa County. It said: "The scope and volume of pesticide use by public agencies in Contra Costa County is extensive, but has yet to be thoroughly assessed. Pesticides are often applied by minimally trained personnel without the consideration and use of reasonably available, less hazardous alternatives. The numerous juristictions [sic] which exist throughout the county create the potential for a duplicity of programs which lack coordination. Much of the pesticide use by public agencies and institutions is unrecorded and unreported. Pesticide use is poorly monitored and subject to a low level of control. Under the present pesticide regulatory system, no one agency has a clearly defined and comprehensive program to monitor and regulate urban pesticide use. In many cases, elected officials have not exercised their responsibility to evaluate and set policy on the use of biological poisons in programs funded by public monies."

In November 1980, Citizens requested that the Department supply copies of all documents from 1977 regarding its evaluations of pesticide surveillance and enforcement activities in several California counties. The request included; "final and draft reports, staff drafts and reports, notes of conversations and meetings, and any county or federal documents" in the Department's possession which concern matters of pesticide surveillance and enforcement. The Department responded that evaluations were conducted only in two of the subject counties, Contra Costa and San Francisco. It stated: "The evaluations of Contra Costa and San Francisco counties are in process and are not expected to be completed before the end of January 1981. Their release is currently exempted from disclosure under California Government Code Section 6254(a)."

Plaintiffs then commenced this mandamus action seeking disclosure of the requested writings. At the hearing upon the order to show cause, plaintiffs adduced the foregoing background. The court rejected as irrelevant plaintiff's offer of proof that there had been widespread interest in the management of the pesticides regulatory program.

The Department claimed that the requested documents are exempt from disclosure under sections 6254, subdivision (a), and 6255. It relied primar-

ily on a declaration and the oral testimony of Jerome Campbell, a pesticide use specialist employed by the Department. He said the subject writings consisted of notes, memoranda and other writings created and utilized by personnel of both the Department and of the United States Environmental Protection Agency (USEPA) for the purpose of inspecting and evaluating pesticide enforcement programs in the counties of Contra Costa and San Francisco. The declaration states that the writings are presently maintained by the Department as a basis for reports to be later published and that they consist of individual team members' impressions and opinions of the operations of the county agriculture departments which were visited, inspected and evaluated. Campbell declared that the use of the writings is limited to the preparation of the draft or drafts which ultimately result in the reports of the Department and that they are not normally retained after that is accomplished.

At trial Campbell testified that there is no standard in the Department as to what memoranda from the USEPA are retained and which are destroyed. Further, no decision had yet been made whether or not any of the documents requested would be discarded. In his opinion, "most" of the specific documents in issue would be discarded. The trial court reminded him that his declaration said the subject writings are not normally retained and asked if this applied to all the writings in issue. Campbell replied: "Portions of that, right—that statement, they are contained in those files. Working copies, ones that we received out in the field normally would not be retained. [Unless the Department expected a challenge to the final report]." On redirect examination counsel for the Department asked if, in Campbell's experience, based on his 20 inspections of counties, it was the ordinary practice of the Department to discard notes, memoranda, preliminary drafts and such papers once final reports were published. Campbell testified: "Yes, we normally dispose of the working papers when the final report is in."

The Department produced the writings, which the court examined *in camera* pursuant to Evidence Code section 915 and section 6259. After reviewing the documents the trial court said: "while there are some factual matters involved, the files are replete with opinion inextricably intertwined with the factual information." The trial court found the writings to be exempt from disclosure: "Because the subject writings are exempt from disclosure under the express provisions of Government Code section 6254, subdivision (a), withholding of the subject writings is justified within the meaning of Government Code section 6255." Judgment was entered denying the petition for writ of mandate.

Plaintiff unsuccessfully moved for a new trial, asserting: (1) the trial court erred in evidentiary rulings made at the hearing; and (2) Department's sub-

sequent publication of the final report dealing with pesticide surveillance and inspection in Contra Costa and San Francisco counties demonstrated the need for public disclosure of the subject writings in order to ensure the final report was representative of the material contained within the requested documents. The final reports which were to be compiled from the data contained in the requested documents had not been published prior to the hearing on the order to show cause. These reports were issued prior to plaintiff's motion for a new trial.

Each final report bears the title "1980 County/State/EPA Evaluation Pesticide Use Enforcement." Each is on a checklist form divided into eleven categories, containing pre-printed statements to be answered exclusively by checking either: "[__] Yes/Meets" or "[__] No/Does Not Meet." The sole exception to the checklist format is the sparse provision for "Comments/ Recommendations" at the end of each category. The final reports contain few comments or recommendations. They do not reveal what evidence, if any, was gathered by the monitors. They do not say how the investigation was made, who or what was investigated, or when the investigations took place. In short, they are utterly conclusory documents.

We have also reviewed the writings sought by plaintiffs. These documents are contained in two manila folders, one for each county. Each contains a checklist form identical to that used for the final reports. These forms are annotated with handwritten notes and appear to have been prepared during on-site visits to the counties. Each file also contains other handwritten documents also apparently prepared on site. The San Francisco file contains a typewritten document stamped "Draft" which tracks the categorical format of the final reports but does so in a narrative style stating county practices found by the investigator. Both files contain a typewritten memorandum of a USEPA employee who participated in the on-site visit. The San Francisco file includes an undated telephone message slip memorializing a telephone call by one Department employee to another to say thanks. Finally, both files contain a note pertaining to the fact of plaintiff's request for the records in issue.

In minor part, these documents consist of recommendations for improvements of county operations and proposals for the disposition of the items on the checklist forms of the final reports. As appears these matters are not subject to disclosure. They also provide a wealth of detail concerning the methodology of the Department inspection and monitoring visits and facts concerning county operations as perceived by the monitors. As will be shown these matters are subject to disclosure.

DISCUSSION

I

Section 6250 et seq. comprise the California Public Records Act. This enactment, like the federal Freedom of Information Act (5 U.S.C. § 552) upon which it is in part patterned (see *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 652 [117 Cal.Rptr. 106]), expresses a policy generally favoring disclosure of public records.[2] "[T]he Legislature . . . finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) ■ Grounds to deny disclosure of information "must be found, if at all, among the specific exceptions to the general policy that are enumerated in the Act." (*State of California* ex rel. *Division of Industrial Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778, 783 [117 Cal.Rptr. 726].) The general policy of disclosure reflected in the act "can only be accomplished by narrow construction of the statutory exemptions." (*San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 773 [192 Cal.Rptr. 415].)

■ The disputed exemption is contained in section 6254, subdivision (a). At the time of trial it provided that disclosure is not required if the records are: "Preliminary drafts, notes, or interagency or intra-agency memoranda which are not retained by the public agency in the ordinary course of business, provided that the public interest in withholding such records clearly outweighs the public interest in disclosure."[3] Thus there are three statutory conditions for exemption: (1) The record sought must be a preliminary draft, note, or memorandum; (2) which is not retained by the public agency in the ordinary course of business; and (3) the public interest

---

[2] The California Public Records Act was enacted against a "background of legislative impatience with secrecy in government . . . ." (53 Ops.Cal.Atty.Gen. 136, 143 (1970).) It is undisputed that the documents in issue here are public records. Section 6252, subdivision (d), states that " '[p]ublic records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." The word "writing" is itself defined comprehensively in subdivision (e) of section 6252: " 'Writing' means handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, magnetic or paper tapes, photographic films and prints, magnetic or punched cards, discs, drums, and other documents."

[3] A subsequent amendment of the statute (apparently not substantive) has excised the word "such" and inserted in its place the word "those."

in withholding must clearly outweigh the public interest in disclosure.[4] The burden of proof and of persuasion of the existence of each condition is the Department's. (§ 6255.) Whether or not the Department has met its burdens depends upon the meaning of the statutory conditions. That in turn is revealed in the statutory language and the purpose of the exemption.

The purpose of the exemption is to provide a measure of agency privacy for written discourse concerning matters pending administrative action. We discern this purpose from reading the statute and reviewing its antecedents.

Two years prior to enactment of the California Public Records Act Congress enacted the federal Freedom of Information Act (FOIA). Our Legislature was cognizant of this recent federal statutory antecedent. (See Schaffer et al., *A Look At The California Records Act and Its Exemptions* (1973) 4 Golden Gate L.Rev. 203, 210-213.) ■ As related, the California enactment is modeled upon the FOIA. Thus, "the judicial construction and legislative history of the federal act serve to illuminate the interpretation of its California counterpart." (See *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 447 [186 Cal.Rptr. 235, 651 P.2d 822].)

The apparent cognate of section 6254, subdivision (a) in the FOIA is 5 United States Code, section 552(b)(5) (hereafter the "memorandums" exemption). It exempts from compulsory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a [private party] in litigation with the agency." The use in the California act of "inter-agency or intra-agency memoranda" suggests that section 6254, subdivision (a) was "adapted" from section 552(b)(5). (See Schaffer et al., *A Look At The California Records Act and Its Exemptions, supra,* at p. 213.) Thus, it has been suggested, "[d]espite a difference in wording the purpose and subject matter of the federal and California exemptions are largely the same." (See *ibid.;* also see Fellmeth and Folsom, California Regulatory Law and Practice (1983) pp. 38-40.)

■ The FOIA "memorandums" exemption has been considered several times by the United States Supreme Court and an extensive analysis of the provision and the case law is provided by Professor Davis in 1 Administrative Law Treatise (2d ed. 1978) sections 5:33-5:37. We accept his synopsis:

[4]The only other reading would have preliminary drafts and notes subject to withholding regardless of retention in the ordinary course of business. We reject this as illogical since no reason appears why retention should be a factor of significance for memoranda but not the other materials. Moreover, all other factors being equal, in view of the tenor of the California Public Records Act we would resolve ambiguity in favor of disclosure.

*"The key to all the cases is that the . . . exemption protects the deliberative materials produced in the process of making agency decisions, but not factual materials, and not agency law."* [Italics in original.] (*Id.*, at p. 405.) The purpose of the exception is to foster robust discussion within the agency of policy questions attending pending administrative decisions. (See, e.g., *NLRB* v. *Sears, Roebuck & Co.* (1975) 421 U.S. 132, 149, 155 [44 L.Ed.2d 29, 46, 50, 95 S.Ct. 1504].) The means to achieve this is an exemption from disclosure of those portions of predecisional writings containing advisory opinions, recommendations, and policy deliberations. (See *ibid.*) However, "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context . . . . [are not exempt from disclosure]." (See *EPA* v. *Mink* (1973) 410 U.S. 73, 87-89 [35 L.Ed.2d 119, 132-133, 93 S.Ct. 82].)

The text and context of section 6254, subdivision (a) suggest that it has essentially the same purpose as its FOIA cognate. Accordingly, to the extent permitted by the express statutory language, we will look to the reasoning of the analogous federal case law in construing section 6254, subdivision (a). We turn to the application of the statute to this case.

## II

■ Plaintiffs properly concede that the records they seek are within the ambit of the first condition of section 6254, subdivision (a) as "[p]reliminary drafts, notes, or interagency or intra-agency memoranda."[5] The records here are documents produced in the course of a determinate process of evaluating compliance of a county with state criteria of an effective pesticide law enforcement program. The process results in administrative action by the Department, i.e., issuance of the "report card" to the county concerning its pesticide use law enforcement program. The writings here are "pre-decisional communications" (see *NLRB* v. *Sears, supra,* 421 U.S. at p. 151 [44 L.Ed.2d at p. 48]) in this process. Thus, they *may* lie

---

[5]Prior to enactment of the California act the disclosure of writings in the custody of public officials was governed by former section 1227. (See Stats. 1951, ch. 655, § 23.) Former section 1227 provided: "The public records and other matters in the office of any officer, except as otherwise provided, are at all times . . . open to inspection . . . ." (*Ibid.*) The term "other matters" had been limited by case law to other matters of a "public" nature, i.e., " 'of, pertaining to, or affecting, the public at large or the community.' " (*Coldwell* v. *Board of Public Works* (1921) 187 Cal. 510, 520 [202 P. 879]; also see Comment, *Access to Government Information in California* (1966) 54 Cal.L.Rev. 1650, 1665-1671.) However, if "other matters" were writings of public interest, disclosure could not be impeded with the claim that they were preliminary in nature, "tentative and . . . liable to error or alteration . . . ." (*Coldwell, supra,* at p. 520.)

within the purposive ambit of the exemption from disclosure.[6] These are the sort of preliminary writings that may be withheld if they meet the other conditions of section 6254, subdivision (a).

## III

The second condition of section 6254, subdivision (a) is that the records be documents which are not retained by the Department in the ordinary course of business.[7] If preliminary materials are not customarily discarded or have not in fact been discarded as is customary they must be disclosed. (§ 6254, subd. (a).) Thus, the agency controls the availability of a forum for expression of controversial views on policy matters by its policy and custom concerning retention of preliminary materials.

No evidence of a Department policy was offered on this point. However, Campbell's testimony is evidence of a Department custom. Constrained by the substantial evidence principle of appellate review, we uphold the finding of the trial court that most of the writings in issue would customarily be discarded by the Department in the ordinary course of business. However, Campbell's testimony does not support such a finding regarding the EPA memoranda which are contained in each county file. Campbell consistently avoided inclusion of these documents in his generalizations concerning the nonretention of "working papers." Accordingly, we conclude that the Department failed to carry its burden of proof to warrant exemption of the EPA memoranda.

## IV

The third condition in section 6254, subdivision (a) is that the public interest in withholding the records clearly outweigh the public interest in disclosure. The initial question is what meaning to assign to the phrases

---

[6]The result of the addition of the terms "preliminary drafts" and "notes" to the enumeration contained in the FOIA provision is to dispel the potential ambiguity concerning the reach of the exemption. "Memorandum" sometimes connotes a writing made for communication between persons. "Notes" or "drafts," however, may be written with no intent to transmit them to persons other than the author.

[7]One of the purposes of the FOIA is the avoidance of undisclosed written rules of decision for administrative action, so called "secret law." (*NLRB* v. *Sears, Roebuck & Co., supra,* 421 U.S. at pp. 137-138 [44 L.Ed.2d at p. 40]; see also 1 Davis, Administrative Law Treatise, *supra,* §§ 5:18, 5:33.) This purpose has been taken into consideration in the interpretation of its FOIA "memorandums" exemption. (*Ibid.*) The second condition for exemption in section 6254, subdivision (a) is a simple and powerful device to prevent the development of "secret law." This condition narrows the scope of the California act exemption from that of the FOIA counterpart. (Compare *NLRB* v. *Sears, supra,* 421 U.S. at p. 151 [44 L.Ed.2d at p. 48], fns. 18 and 19.)

"public interest in withholding such records" and "public interest in disclosure."[8] We first consider the latter term.

The meaning of the term "public interest in disclosure" is evident from the fundamental finding of the Legislature set forth at the commencement of the California Public Records Act. We reiterate that finding: ". . . access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) If the records sought pertain to the conduct of the people's business there is a public interest in disclosure. The weight of that interest is proportionate to the gravity of the governmental tasks sought to be illuminated and the directness with which the disclosure will serve to illuminate.

The Department suggests that here there is no "evidence" of "public interest in disclosure." This stems from a misperception of what constitutes a showing that information is of public interest. Sometimes an evidentiary showing of the publicly beneficial use that may be made of information may be helpful in assessing the public interest served by disclosure. (See *Uribe* v. *Howie* (1971) 19 Cal.App.3d 194, 210-211 [96 Cal.Rptr. 493].) However, in the usual case the existence and weight of the "public interest in disclosure" is a conclusion derived from the nature of the information in issue. (See *Coldwell* v. *Board of Public Works, supra,* 187 Cal. at p. 520, preliminary specifications and estimates for water project is a public matter in which the public has an interest.) Here, the factual matters in the preliminary documents concern the conduct of county officials in enforcing the pesticide use laws and the conduct of state officials in the investigation and supervision of that task. It is simply incontestible that these are grave public matters in which the public has a substantial interest in disclosure. The records sought to be disclosed strongly illuminate the conduct of pesticide use law enforcement. We must weigh this "public interest in disclosure" against the asserted counterveiling statutory interest in nondisclosure.

What is the "public interest in withholding such records?" In this connection it is the interest in fostering robust agency debate which is the subject of section 6254, subdivision (a). It might be argued the phrase should be read broadly, as a catchall opportunity to raise policy arguments concerning the utility of releasing the information. Such a reading is untenable. The remaining provisions for exemption from disclosure in the Cali-

---

[8]The dissent finds analysis of this point too tiresome and implies we should mutely defer to the bare conclusions of law of the trial court. This secretive approach to legal analysis is uniquely out of place when the topic itself is governmental secrecy. Rather than camouflaging this point, we reveal the public interests at stake.

fornia act address other specific policy concerns that the Legislature deemed worthy of note. Failure to raise these exemptions waives the right to tender policy arguments logically assigned to them. Section 6255 provides a generalized or catchall opportunity to tender policy arguments against disclosure that are not addressed by specific exemptions. A broad reading of the phrase "the public interest in withholding such records," as used in section 6254 subdivision (a), would render it superfluous. Thus, that phrase can only address the specific policy domain of the statutory exemption.

As related, that policy domain is the same as that addressed in the FOIA "memorandums" exception. Thus, reasoning in the federal case law concerning what disclosure is consistent with the policy fostering robust agency debate is applicable. We import the FOIA precept, related *ante:* memoranda consisting of factual material or severable factual material contained in memoranda along with deliberative material may be disclosed without doing violence to "the public interest in withholding such records." (Cf. *Northern Cal. Police Practices Project* v. *Craig* (1979) 90 Cal.App.3d 116, 123-124 [153 Cal.Rptr. 173].) The remaining question is what is severable factual material?

As related, the trial court concluded that the factual material in the preliminary documents here could not be severed because it is "inextricably intertwined with opinion."[9] This conclusion is based on two incorrect prem-

---

[9]The court's findings were: "[The] notes and memoranda reflect the team members' perceptions and opinions about what they saw and were told, but are not, and were not intended to be, exhaustive records of the inspections or complete evaluations thereof. To the extent that the notes and memoranda refer to things that were seen and heard by the team members, they contain what may be considered factual material. The factual material is inextricably intertwined with opinion. The opinions are based not only on the factual information but are also predicated on omission involving the judgment of the personnel involved as to whether the omissions were or were not appropriate . . . .

"Reports of the Department's findings on its inspection and evaluations of the county agricultural departments are expected to be prepared by the collective efforts of the team members who visited the respective county departments.

"[T]he writings which are the subject of this action are clearly implicated in the process of collective consultation and deliberation from which the findings of the Department will issue in the form of a written report. Disclosure of these writings, which contain and reflect the subjective impressions and mental processes of the team members as well as perceptions and impressions of the factual material upon which these processes operate, would be expected to impair the candid internal exchange of opinions and views necessary to the formulation of responsible and balanced positions upon issues with which the Department's public records must deal. Unless protected from public disclosure, the information thus exchanged would not flow freely within the Department. Under these circumstances the public interest is far better to be served by withholding these writings than by disclosing them. Thus, the public interest in nondisclosure of these writings clearly outweighs the public interest in their disclosure . . . .

"The subject writings are therefore exempt from disclosure under the California Public Records Act, pursuant to the provisions of Government Code section 6254, subdivision (a)."

ises. The first is that the factual material to which an opinion may be addressed is immunized from disclosure because of its relation to the opinion. That simply sweeps all of the facts out with the opinions. But it is a simple matter to separate the factual descriptions of what went on, such as the times and places of the inspections and the observations made at those places, from the recommendations made on the basis of these facts.

The second incorrect premise is that an opinion can never be a fact subject to disclosure. Because a statement is one of opinion does not necessarily place it within the policy served by section 6254, subdivision (a). Opinions may be "purely factual" and hence disclosable. Thus, a statement of opinion that there *is* a county policy or practice, including that of a county employee, is a fact which must be disclosed. That a judgment (an opinion) is embedded in a statement that something is the case (the hallmark of a factual claim) obviously does not deprive it of its factual quality. It is only an opinion which is "recommendatory" that may be withheld. (See Note, *The Freedom of Information Act and the Exemption for Intra-Agency Memoranda* (1973) 86 Harv.L.Rev. 1047, 1049-1057.) A statement of opinion concerning whether county conduct, policy or practice conforms to the law or whether the Department should endorse, rebuke, or take some other action in view of the conduct, policy or practice is "recommendatory" and meets the condition for withholding.

With these principles in mind we have reviewed the documents sought by plaintiffs. The documents contain much severable factual information with no recommendatory content. That includes the times and places of the investigations and the observations made. For example, the Contra Costa documents reveal that the monitoring personnel accompanied a county inspector on an inspection tour in the field. A grower applying a pesticide to tomatoes was inspected. Numerous illegal pesticide use practices were observed by the federal and Department monitors that were not pointed out by the county inspector. Later the four local crop-duster airstrips were visited with the county inspector. Two were okay. A third was a "disaster area," with empty pesticide containers strewn about. The fourth was the home base of an aerial pesticide applicator who "violates the regulations on a regular basis. The county has done very little in making this applicator comply." The county inspector told this applicator it was okay to dump "5 gal" at the end of the airstrip. This is all factual matter that must be disclosed.

We imply no view on the question of whether disclosure of the recommendatory matter nonetheless may be sometimes required because the public interest in disclosure outweighs the public interest in frank internal policy discussion. Here, the "recommendatory" opinions of the Department's in-

vestigators are exempt. No focused claim for disclosure of these opinions has been tendered.

### DISPOSITION

We have photocopied the documents sought and masked the portions which may be withheld pursuant to the claim of exemption under section 6254, subdivision (a). The Department has demonstrated no proper claim justifying the withholding of the EPA memoranda or the portions of the other documents appearing in the masked photocopies. The judgment is reversed with directions that judgment be entered compelling the Department to release these documents to plaintiffs.

Sparks, J., concurred.

**EVANS, Acting P. J.**—I respectfully dissent. I view the lengthy discussion in the majority opinion as a camouflage of the simple and straightforward answer to the problem presented. At trial, Jerome Campbell, a pesticide use specialist employed in the pesticide enforcement unit of the Department of Food and Agriculture, testified that he had examined the documents sought by the plaintiffs and found them to be notes, memoranda, preliminary drafts, and opinions of inspectors which would be utilized in preparing final reports; he further testified that those documents would be discarded by the department once the final draft had been published. Government Code section 6254, subdivision (a), provides, "Except as provided in Section 6254.7, nothing in this chapter shall be construed to require disclosure of records that are any of the following: [¶] (a) Preliminary drafts, notes, or interagency or intraagency memoranda which are not retained by the public agency in the ordinary course of business, provided that the public interest in withholding those records clearly outweighs the public interest in disclosure." The language of the section is clear and unambiguous, not needing interpretation or clarification. The uncontradicted testimony of Mr. Campbell clearly places the documentation within the technical ambit of that statute. Moreover, I view the evidence as the trial judge did as establishing that the public interest in withholding the records "clearly outweighs the public interest in disclosure."

The Trial Judge Irving Perluss personally examined each document and concluded they should not be disclosed. In his findings, he succinctly and reasonably explained the reasons for exempting the documents from disclosure. My review of the documents compels the same conclusion. I will therefore quote from a portion of Judge Perluss' findings and adopt them as an integral part of my dissent: "The examined writings were contained in

two letter-size folders and are variously handwritten, typed, and handwritten on typed or printed forms.

"7. The examined writings were authored by personnel of the Department and the U.S. Environmental Protection Agency who were assigned to teams for inspection and evaluation of pesticide enforcement programs of the Contra Costa and San Francisco departments of Agriculture in 1980, under the provisions of the Federal Insecticide, Fungicide and Rodenticide Act. The writings themselves are preliminary memoranda and notes of the impressions and opinions of the individual inspection and evaluation team members concerning the agriculture departments which they visited. These notes and memoranda reflect the team members' perceptions and opinions about what they saw and were told, but are not, and were not intended to be, exhaustive records of the inspections or complete evaluations thereof. To the extent that the notes and memoranda refer to things that were seen and heard by the team members, they contain what may be considered factual material. The factual material is inextricably intertwined with opinion. The opinions are based not only on the factual information but are also predicated on omission involving the judgment of the personnel involved as to whether the omissions were or were not appropriate.

"8. The examined writings are maintained by the Department solely as a basis for preparation and eventual publication of reports of the findings of the 1980 evaluations, and will not be retained thereafter in the ordinary course of the Department's business. No documents in the nature of preliminary drafts of reports, as such, have yet been generated by the Department.

"9. Reports of the Department's findings on its inspection and evaluations of the county agricultural departments are expected to be prepared by the collective efforts of the team members who visited the respective county departments. In each case, a draft of a written report is to be prepared by one of the team members, who will utilize in the first instance his own recollections and opinions of the inspection in conjunction with the notes and memoranda reflecting the observations, impressions and opinions of himself and his fellow team members. The draft will thereafter be distributed to and reviewed by the several members of the team, who, having access and reference to the writings which are the subject of this action, will discuss the contents of the draft among themselves and with the author, and engage in the correction of information, clarification of data, and refinement of analysis and opinion. The final report which emerges from this consultative process will be the product of collective deliberation and consensus among the team members.

"10. By reason of the foregoing facts, the writings which are the subject of this action are clearly implicated in the process of collective consultation and deliberation from which the findings of the Department will issue in the form of a written report. Disclosure of these writings, which contain and reflect the subjective impressions and mental processes of the team members as well as perceptions and impressions of the factual material upon which these processes operate, would be expected to impair the candid internal exchange of opinions and views necessary to the formulation of responsible and balanced positions upon issues with which the Department's public reports must deal. Unless protected from public disclosure, the information thus exchanged would not flow freely within the Department. Under these circumstances the public interest is far better to be served by withholding these writings than by disclosing them. Thus, the public interest in nondisclosure of these writings clearly outweighs the public interest in their disclosure."

I deem it worthy of note that the majority opinion infers some ulterior secretive motive behind rational legal analysis which concludes there can be no public interest in nondisclosure. Reason and law patently are to the contrary.

I would affirm the judgment.