TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|   |   |   |
|---|---|---|
| OPINION | : | No. 85-903 |
| of | : | JUNE 18, 1986 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| RODNEY O. LILYQUIST<br>Deputy Attorney General | : | |

_____


THE HONORABLE J. E. SMITH, COMMISSIONER, DEPARTMENT OF THE CALIFORNIA HIGHWAY PATROL, has requested an opinion on the following question:

Are the motor carrier records of the Department of the California Highway Patrol exempt from disclosure to the general public?

CONCLUSION

The motor carrier records of the Department of the California Highway Patrol are not exempt from disclosure to the general public.

ANALYSIS

The Department of the California Highway Patrol ("CHP") is developing a statewide information system to monitor the safety performance of motor carriers

1

operating in California, with particular emphasis upon those who transport hazardous materials and hazardous wastes.

The following information is being gathered: (1) the carrier's name, address, and telephone number; (2) the carrier's principal cargo—hazardous materials, hazardous waste, explosives, CHP regulated load, general freight, permit load, less-than-truckload or bulk; (3) the carrier's classification—private (transports only own property), common (for hire by anyone), contract (transports under specific contract), or state or local agency; (4) three emergency contact persons with day and night telephone numbers; (5) operating authority listings assigned by the Interstate Commerce Commission or the California Public Utilities Commission; (6) prorate registration and inter- national registration plan information with assigned number and base state; (7) license and permit information—number, type, and expiration date of CHP issued licenses held by the carrier (hazardous materials transportation or inspection and maintenance station), history of actions taken regarding these two licenses (suspension, probation, revocation), and hazardous waste hauler registration number and expiration date; (8) an inventory of vehicles used—power units, towed units, cargo tanks, hazardous waste vehicles and containers; (9) the number of drivers employed and under contract; (10) the location of terminals in California; (11) fleet miles operated for the past calendar year; (12) accident involvement for the past three years—dates, times, and locations of accidents involving the carrier's vehicles, number of persons killed or injured, and identification of the CHP investigating officers; (13) citations issued to the carrier's drivers for the past three years—dates, times, drivers' license numbers, Vehicle Code section cited, and identification of the CHP investigating officers; (14) inspection dates and terminal safety compliance ratings for the past three years; and (15) hazardous materials spill data—dates, times, locations, product identifications, and number of persons killed or injured.

The question presented for analysis is whether the information being obtained by the CHP is exempt from disclosure to the general public. The CHP has determined that such is not the case. We believe that the CHP's determination would be upheld in court.

Preliminarily, we note that the information is being gathered as part of the responsibility of the CHP to monitor the carriers of hazardous materials. Vehicle Code section 32000[1] requires the CHP to license and conduct an inspection program for motor carriers transporting hazardous materials. The licensing program is initiated when a motor carrier submits an application under subdivision (e) of section 2502:

---

[1] All references to the Vehicle Code prior to footnote 3 are by section number only.

2

"Each application shall be made upon a form furnished by the commissioner. It shall contain such information concerning the applicant's background and experience as the commissioner may prescribe, in addition to other information required by law."

Items of information (1), (2), (3), (4), (5), (6) and (7) are part of the license application data obtained under the authority of section 2502.

The inspection program involves "maintenance facilities, terminals, or other public or private property to ascertain the quantity and kind of hazardous material and to ensure compliance with the provisions of this code and regulations adopted pursuant to this code." (§ 32001, subd. (a); see Cal. Admin. Code, tit. 13, § 1160 et seq.) Items of information (1), (2), (5), (8), (9), (10), (11) and (14) are gathered as part of the inspection program authorized by section 32001.

The CHP also acts as the "statewide information, assistance and notification coordinator for all hazardous substances spill incidents occurring on highways within the State of California." (§ 2453; see 65 Ops.Cal.Atty.Gen. 32, 35 (1982).) Items of information (4) and (15) particularly further this statutory function.

The Legislature has specifically directed the CHP to give "special attention . . . to the negligent operators or repeat violators" in the hazardous materials transportation program. (§ 32000.) Items of information (7), (12), (13), (14), and (15) are gathered to meet this statutory directive.[2]

Nothing in the statutory scheme for the licensing and monitoring of carriers of hazardous materials prohibits the CHP from disclosing to the general public the information being recorded; nothing in the scheme requires disclosure. Hence, we necessarily look to other provisions of law in analyzing the disclosure issue.

I. THE CALIFORNIA PUBLIC RECORDS ACT

The California Public Records Act (Gov. Code, §§ 6250-6265; "Act")[3] requires state agencies to have their "public records" (§ 6252, subd. (d)) available for public inspection (§ 6253) and for copying (§ 6256) unless a particular record is

---

[2] The information being obtained and stored by the CHP involves the use of forms and the internal management of the CHP while complying with legislative grants of authority and mandates. (See *Cook* v. *Craig* (1976) 55 Cal.App.3d 773, 785- 786.)

[3] All references hereafter to the Government Code are by section number only.

"exempt" from disclosure (§ 6254) or the agency demonstrates that "the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record" (§ 6255). (See generally *American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440; *Citizens for a Better Environment* v. *Department of Food & Agriculture* (1985) 171 Cal.App.3d 704; *San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762; 68 Ops.Cal.Atty.Gen. 73 (1985).)

The purpose of the statutory scheme is to provide "access to information concerning the conduct of the people's business" while being "mindful of the right of individuals to privacy." (§ 6250.) Although the Act contains provisions against disclosure of certain records, such provisions are to be narrowly construed. (*Citizens for a Better Environment* v. *Department of Food and Agriculture, supra,* 171 Cal.App.3d at p. 711; *South Coast Newspapers, Inc.* v. *City of Oceanside* (1984) 160 Cal.App.3d 261, 270; *San Gabriel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d at pp. 772-773; *Cook* v. *Craig, supra,* 55 Cal.App.3d at p. 781; *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 653, fn. 7.)

Records containing both exempt and nonexempt information must be disclosed if a reasonable segregation may be made and the exempt portions deleted. (§ 6257; see *American Civil Liberties Union Foundation* v. *Deukmejian, supra,* 32 Cal.3d at p. 453; fn. 13; *Citizens for a Better Environment* v. *Department of Food & Agriculture, supra,* 171 Cal.App.3d at pp. 717-718; *South Coast Newspapers, Inc.* v. *City of Oceanside, supra,* 160 Cal.App.3d at p. 270; *Braun* v. *City of Taft* (1984) 154 Cal.App.3d 332, 344; *Johnson* v. *Winter* (1982) 127 Cal.App.3d 435, 440; *Northern Cal. Police Practices Project* v. *Craig* (1979) 90 Cal.App.3d 116, 123-124.)[4]

Significantly, "the Act imposes no limits upon who may seek information or what he may do with it." (*American Civil Liberties Union Foundation* v. *Deukmejian, supra,* 32 Cal.3d at p. 451; see *San Gabriel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d at p. 780.) Moreover, disclosure of exempt material to any member of the public waives any further claims of exemption. (§ 6254.5.)

When a public agency refuses to disclose information on the basis of sections 6254 or 6255, the person seeking access may institute legal proceedings. (§ 6258.) The court "shall order the public official to make the record public" if it "finds that the . . . decision to refuse disclosure is not justified." (§ 6259.)

---

[4] Since we are dealing with information in the CHP's computer files, we note that section 6256 states: "Computer data shall be provided in a form determined by the agency."

4

With this background in mind, we turn to the specific provisions of the Act that arguably may prevent public disclosure of the carrier records.

### A.    Section 6254, subdivision (c)

Subdivision (c) of section 6254 provides for an exemption from disclosure for "[p]ersonnel, medical or similar files, the disclosure of which would constitute an unwarranted invasion of privacy." It may be argued that a motor carrier has a privacy interest, however minimal, in all of the data being gathered by the CHP concerning the carrier.

We first note that the carrier information is not being contained in what may be characterized as "personnel" or "medical" files. (See *American Civil Liberties Union* v. *Deukmejian*, *supra*, 32 Cal.3d at p. 447, fn. 5.) As for "similar files," *Braun* v. *City of Taft*, *supra*, 154 Cal. App.3d at pp. 343-344, relied upon language in *Sims* v. *Central Intelligence Agency* (D.C. Cir. 1980) 642 F.2d 562, 575, that the "similar files" provision is limited to the protection of "'intimate details of personal and family life, not business judgments and relationships.'" (See 68 Ops.Cal.Atty.Gen. 73, 76 (1985).

In 62 Ops.Cal.Atty.Gen. 436, 439 (1979), we concluded that the State Treasurer's records specifying the owners of state registered bonds were subject to disclosure since they "reflect the actual conduct of the Treasurer's public business, while personnel and medical files concern more private revelations collected for other than what is normally viewed as 'recorded official action.'" (See also 63 Ops.Cal.Atty.Gen. 46, 48 (1980); 62 Ops.Cal.Atty.Gen. 595, 600 (1979); 53 Ops.Cal.Atty.Gen. 136, 145-146 (1970).)

Item (4) of the carrier information, the names and telephone numbers of the three emergency contact persons, appears to be the most "intimate" and "private" of the information being stored by the CHP. Yet the Court of Appeal said in *Braun* v. *City of Taft*, *supra*, 154 Cal.App.3d at p. 345:

> "One's telephone number and address, although personal, are seldom secret. There is nothing to show that such information was not available through a city directory or telephone book."

Having expertise in dealing with an emergency involving hazardous materials is not an embarrassing quality. It would not appear to be within one of the "sensitive areas of personal information" requiring protection. (See *Davies* v. *Superior Court* (1984) 36 Cal.3d 291, 306 (conc. opn. of Bird, C.J.); *Willis* v. *Superior Court* (1980) 112

5

Cal.App.3d 277, 297); 67 Ops.Cal.Atty.Gen. 415, 418 (1984); 64 Ops.Cal. Atty.Gen. 575, 582 (1981).)

More importantly, transporting hazardous materials over the highways of the state concerns the rights of the public, and being responsible for a highway emergency cannot be shielded as the disclosure of "private and personal revelations." (See 63 Ops.Cal.Atty.Gen. 46, 48 (1980); 62 Ops. Cal.Atty.Gen. 595, 600 (1979); 53 Ops.Cal.Atty.Gen. 136, 145-146 (1970).)

We thus believe that a court would uphold the CHP's determination that neither the names and telephone numbers of the three emergency contact persons nor any of the other carrier information is exempt from disclosure under subdivision (c) of section 6254.

B.      Section 6254, subdivision (f)

Subdivision (f) of section 6254 provides an exemption from public disclosure for "[r]ecords of complaints to, or investigations conducted by, or records of intelligence information . . . of . . . any state or local police agency . . . ." Does any of the CHP's carrier information come within the scope of subdivision (f), for example the histories of actions taken regarding the carrier licenses (suspension, probation, revocation), accident involvement for the past three years, citations issued to the carrier's drivers for the past three years, terminal safety compliance ratings for the past three years, and hazardous materials spill data?

As previously discussed, all motor carriers transporting hazardous materials over the public roads of California are subject to licensing and inspection by the CHP. (Veh. Code, §§ 2502, 32000, 32000.5.) The CHP is required to monitor its enforcement program in a detailed manner due to the possibly serious consequences of an accident involving hazardous materials upon the public highways. (See Veh. Code, § 32000.)

The records under consideration herein do not arise because of "complaints" having been filed with the CHP. Nor can it be said that they are "investigatory" in nature since they involve all carriers of hazardous materials without regard to "concrete and definite enforcement prospects." (See *American Civil Liberties Union Foundation* v. *Deukmejian, supra*, 32 Cal.3d at p. 449, fn. 10; *South Coast Newspapers, Inc.* v. *City of Oceanside, supra*, 160 Cal.App.3d at pp. 267- 269; *Younger* v. *Berkeley City Council* (1975) 45 Cal.App.3d 825, 833; *Uribe* v. *Howie* (1971) 19 Cal.App.3d 194, 212-213.) Moreover, the records are not "records of intelligence information" inasmuch as they are not obtained in confidence with respect to specific

6

criminal activity. (See *American Civil Liberties Union Foundation* v. *Deukmejian, supra*, 32 Cal.3d at pp. 449-453.)[5]

Finally, we note that subdivision (f) of section 6254 specifically provides:

"Other provisions of this subdivision notwithstanding, state and local law enforcement agencies shall make public the following information, except to the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation: (1) The full name, current address, and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges the individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds. (2) The time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date and location of occurrence, the time and date of the report, the name, age and current address of the victim, except that the address of the victim of any crime defined by Section 261, 264, 264.1, 273a, 273d, 286, 288, 288a, or 289 of the Penal Code shall not be disclosed, the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved."

We thus conclude that the CHP would be upheld in court in finding that the exemption of subdivision (f) of section 6254 is inapplicable to the motor carrier records in question.

C.     Section 6254, subdivision (k)

Subdivision (k) of section 6254 provides an exemption from public disclosure for "[r]ecords the disclosure of which is exempted or prohibited pursuant to

---

[5] Of course to the extent the CHP is conducting an ongoing investigation with respect to specific violations of law by a particular hazardous materials carrier, investigative records relating thereto would be temporarily exempt from disclosure as specified in subdivision (f).

provisions of federal or state law, including but not limited to provisions of the Evidence Code relating to privilege." Are there any statutes outside the Act that would bar disclosure of the records at issue?

### 1. Evidence Code section 1040

Evidence Code section 1040 provides a privilege against disclosure of "official information" where, among other things, "[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice."

First we note that an agency may not change non- exempt records into exempt records merely by assuring the source of the information that it will remain confidential. (*San Gabriel Tribune* v. *Superior Court*, *supra*, 143 Cal.App. 3d at p. 776; *Johnson* v. *Winter, supra*, 127 Cal.App.3d at p. 439.) Mere allegations of future possible harm will not sustain the privilege; the government must demonstrate some plausible justification for protecting the information. (*Uribe* v. *Howie*, *supra*, 19 Cal.App.3d at p. 210.) The issue is whether disclosure will impair the government's ability to obtain similar information in the future. (See *City and County of S.F.* v. *Superior Court* (1951) 38 Cal.2d 156, 162- 163; *Runyon* v. *Board etc. of Cal.* (1938) 26 Cal.App.2d 183, 185; Note, *The California Public Records Act: The Public's Right of Access to Governmental Information* (1976) 7 Pacific L.J. 105, 121-125; see also *American Civil Liberties Union Foundation* v. *Deukmejian*, *supra*, 32 Cal.3d at pp. 446-447, fn. 6.)

Here the motor carriers must furnish certain information in order to obtain a license to transport hazardous materials; this information is also being given by other carriers on a voluntary basis. The remaining information is being gathered by the CHP with respect to accidents, citations, safety compliance ratings and spill data, none of which requires confidentiality in order to be procured. We thus conclude that a court would agree with the CHP that Evidence Code section 1040 is inapplicable to these records.

### 2. Evidence Code section 1060

Evidence Code section 1060 provides a privilege against the disclosure of a "trade secret" where "the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." Under the statute the owner of the secret must claim the privilege in order to protect another from disclosing it.

Much of the information being gathered by the CHP from the motor carriers involves their individual business affairs—type of cargo, inventory of vehicles,

number of employees, fleet miles operated, and terminal safety compliance ratings. Does any of this information constitute a trade secret exempt from disclosure under Evidence Code section 1060?

In *Uribe* v. *Howie, supra*, 19 Cal.App.3d 194, the Court of Appeal examined the trade secrets exemption with respect to pesticide spray reports in the possession of a county agricultural commissioner. It applied the definition of trade secrets found in the Restatement of Torts:

> "'A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. It differs from other secret information in a business (see § 759) in that it is not simply information as to single or ephemeral events in the conduct of the business, as, for example, the amount or other terms of a secret bid for a contract or the salary of certain employees, or the security investments made or contemplated, or the date fixed for the announcement of a new policy or for bringing out a new model or the like. A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article. It may, however, relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates or other concessions in a price list or catalogue, or a list of specialized customers, or a method of bookkeeping or other office management.'" (*Id*. at p. 207.)[6]

The subject matter of a trade secret necessarily must not be a matter "'of public knowledge or of general knowledge in an industry.'" (*Ibid*.) The court concluded in *Uribe* that the information in the reports could be obtained "by a number of people outside the pesticide application industry" and did not result from "any substantial investment in research and development to be protected by a policy of nondisclosure." (*Id*. at p. 209.)

---

[6] A trade secret is also defined for various purposes in sections 6254.1, 6254.7, Health and Safety Code section 25173, and Civil Code section 3426.1. The Uniform Trade Secrets Act (Civ. Code, §§ 3426-3426.10) specifically provides that its enactment "does not affect the disclosure of a record by a state or local agency under the California Public Records Act." (Civ. Code, § 3426.7, subd. (c).)

9

The trade secrets exemption was also analyzed in *San Gabriel Tribune* v. *Superior Court*, *supra*, 143 Cal.App.3d at pp. 775-778. The court found that corporate financial data could be disclosed because, among other reasons, the corporation had failed to present compelling proof of economic damage if disclosure were allowed.

None of the information being obtained by the CHP appears to constitute a trade secret as discussed in the *Uribe* and the *San Gabriel Tribune* cases. It is of a general nature known to various persons both within and without the hazardous materials transportation industry. We thus conclude that a court would agree with the CHP that Evidence Code section 1060 is inapplicable to the motor carrier records.

3.    Vehicle Code sections 16005, 20012

Vehicle Code sections 16005 and 20012 require that certain specified accident reports filed by persons involved in accidents be kept confidential unless the person seeking access has a "proper interest."

These confidentiality statutes are to encourage full and accurate accounts and cover only the required reports where the interests of the reporting private parties might otherwise be compromised. The facts of the accidents themselves are not confidential. As stated by the Supreme Court in *Davies* v. *Superior Court*, *supra*, 36 Cal.App.3d at p. 299:

> "Since highway accidents are public occurrences, and are often the object of press reports, it seems unlikely that the legislative purpose was to keep confidential either the fact of the accident or information about its nature and causation. Nor is there any reason to protect the identity of the investigating officer since that information is also readily available from other sources. It seems probable, therefore, that the Legislature intended to protect the privacy of the reporting parties by keeping confidential their identities and information that might disclose identity."

In *People* v. *Ansbro* (1984) 153 Cal.App.3d 273, 277, the Court of Appeal concluded:

> "Vehicle Code sections 20008 through 20010 indicate that required reports are those filed by drivers and passengers of vehicles involved in accidents resulting in death or bodily injury, and by witnesses to such accidents. Hence, it is these reports which are privileged under Vehicle Code section 20012. Reports of accidents made by investigating officers are not so privileged. (*Hodges* v. *Severns* (1962) 201 Cal.App.2d 99, 106; *Carroll* v. *Beavers* (1954) 126 Cal.App.2d 828, 837.) It is important to

10

understand that it is the required reports which are covered by the confidential privileges in sections 20012 and 20013, and not the fact of the accidents themselves. (*State of California* ex rel. *Department of Transportation* v. *Superior Court* (1980) 102 Cal.App.3d 25; *Edgar* v. *Superior Court* (1978) 84 Cal.App.3d 430.)"

The accident information contained in item (12) is gathered firsthand by the CHP investigating officers. We thus conclude that a court would agree with the CHP that Vehicle Code sections 16005 and 20012 do not prohibit disclosure here.

### 4. Civil Code section 1798

The Information Practices Act of 1977 (Civ. Code, §§ 1798-1798.76) prohibits the release of certain "personal information" contained in the files of state agencies under given circumstances.[7] This statutory scheme, however, expressly provides with respect to whether personal information should be disclosed to the public: "This chapter shall not be deemed to supersede [the California Public Records Act] except as to the provisions of Sections 1798.60 and 1798.70." (Civ. Code, § 1798.75.)

Civil Code section 1798.60 states: "An individual's name and address may not be distributed for commercial purposes, sold, or rented by an agency unless such action is specifically authorized by law." Civil Code section 1798.70, on the other hand, does not restrict disclosure but concerns the *release* of personal information to the subject of the information notwithstanding "any exemption in Section 6254 or 6255 of the Government Code."

Accordingly, the motor carrier records of the CHP containing the names and addresses of individuals may not be sold, rented, or distributed by the CHP for financial gain, since the latter activities are not specifically authorized by the Legislature. (See 64 Ops.Cal.Atty.Gen. 575, 587-588 (1981); 63 Ops.Cal.Atty.Gen. 46, 49-50 (1980).) No other provision of Civil Code section 1798 prohibits disclosure of the carrier records by the CHP. We thus conclude that the CHP's determination in favor of disclosure to the public under the requirements of the Act and Civil Code section 1798 would be upheld by a court.

---

[7] The legislation also prohibits the storage of personal information, such as a person's home telephone number, that is irrelevant or unnecessary to accomplish a statutory purpose. (Civ. Code, § 1798.14.) Here, the information is being gathered by the CHP in order to perform its statutory duties and responsibilities. (See Veh. Code, §§ 2453, 2502, 32000, 32001.) For example, the emergency contact telephone numbers are necessary so that the CHP may identify materials spilled at an accident and summon the appropriate emergency services.

D.   Section 6255

Section 6255 provides an exemption from disclosure for a record "that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

While section 6255 provides an independent basis for nondisclosure, many of the same considerations are present in determining its applicability that are found in applying the language of subdivisions (c), (f), and (k) of section 6254, as well as other subdivisions of the latter statute.  (See *American Civil Liberties Union Foundation* v. *Deukmejian, supra*, 32 Cal.3d at pp. 447-454; *Citizens for a Better Environment* v. *Department of Food & Agriculture, supra*, 171 Cal.App.3d at pp. 714-715; *Braun* v. *City of Taft, supra*, 154 Cal.App.3d at p. 345; *San Gabriel Tribune* v. *Superior Court, supra*, 143 Cal.App.3d at p. 780; 64 Ops.Cal. Atty.Gen. 575, 584-587 (1981).).  In particular, if the balancing test under Evidence Code section 1040 does not favor disclosure, the test for disclosure under section 6255 will generally not be met.  (See *American Civil Liberties Foundation* v. *Deukmejian, supra*, 32 Cal.3d at pp. 446-447, fn. 6; 53 Ops.Cal.Atty.Gen. 148, 148-149 (1970); Note, *The California Public Records Act:  The Public's Right of Access to Governmental Information, supra*, 7 Pacific L.J. at pp. 123-125.)

The factors considered in the cases where nondisclosure was authorized under the section 6255 balancing test are not present here.  (See *American Civil Liberties Union Foundation* v. *Deukmejian, supra*, 32 Cal.3d at p. 453 [burden of segregating exempt from nonexempt information]; *Eskaton Monterey Hospital* v. *Myers* (1982) 134 Cal.App.3d 788, 792- 793 [preventing violations of law].)

The public's interest is indeed great regarding the disclosure of information with respect to using and the qualifications for using public highways to transport hazardous materials.  We conclude that a court would agree with the CHP that its carrier records are disclosable under the provisions of section 6255.  (See *Citizens for a Better Environment* v. *Department of Food & Agriculture, supra*, 171 Cal.App.3d at pp. 714-715; *Braun* v. *City of Taft, supra*, 154 Cal.App.3d at p. 345; *San Gabriel Tribune* v. *Superior Court, supra*, 143 Cal.App.3d at p. 780.)

## II. THE CONSTITUTION

The constitutional right to privacy[8] requires analysis when considering whether the state may disclose information to the general public which it has obtained through official channels for governmental purposes. (See *American Civil Liberties Foundation* v. *Deukmejian, supra,* 32 Cal.3d at pp. 449-450; 68 Ops.Cal.Atty.Gen. 73, 78 (1985); 67 Ops.Cal.Atty.Gen. 414, 419-421 (1984).)

Section 1 of article 1 of the Constitution protects "people," not fictional persons such as corporations. (*Roberts* v. *Gulf Oil* (1983) 147 Cal.App.3d 770-793.) While a corporation has a general right to privacy under the United States Constitution, it is not a "fundamental" right requiring the showing of a "compelling state interest" to be overridden. (*Id*. at pp. 784-797.)

In *Braun* v. *City of Taft, supra*, 154 Cal.App.3d at p. 347, the Court of Appeal discussed at length the constitutional right to privacy:

"We believe that the constitutional right to privacy must be balanced against the public's interest in its business in much the same way that the courts have sought accommodation of the reputational interests of the individual and the United States Constitution's First Amendment's protection of press freedoms. (See, e.g., *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254.) . . . .

"The balancing test employed by the trial court in its determination that the records were not exempt under section 6254, subdivision (c) because they do not constitute an unwarranted invasion of privacy is the same one which should be utilized in weighing the right to privacy against the right of the public to oversee the actions of governmental employees. The trial court carefully considered the clash between the need for public disclosure of its business and the need of the individual to privacy when making its determination under section 6254, subdivision (c); no more is required under article 1, section 1, of the California Constitution."

As with our analysis of subdivision (c) of section 6254, we agree with the CHP that no violation of the constitutional right to privacy occurs by release of the CHP's

---

[8] Section 1 of article 1 of the Constitution provides:

"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

13

records in question. The information concerns the use and qualifications for use of the public highways. No reasonable expectation of privacy may be found where the information relates directly to a public activity pervasively regulated by the state due to the potential for serious harm to members of the public. No "compelling state interest" need be found here since the information relates to business relationships rather than to intimate details of personal and family life. (See *Roberts* v. *Gulf Oil Corp., supra*, 147 Cal.App.3d at p. 797; *People* v. *Elder* (1976) 63 Cal.App.3d 731, 737-738; 60 Ops.Cal.Atty.Gen. 73, 78 (1985).) We thus conclude that a court would uphold the release of the carrier records by the CHP to the general public.

*****

14